Michael P. Pasquale, Esq. (To Be Admitted *Pro Hac Vice*)
Law Offices of Michael P. Pasquale, LLC
48 Wall Street, 11th Floor
New York, New York 10005
*Lead Counsel for Plaintiff Rodney Omanoff*

-and-

Scott H. Bernstein, Esq.
Law Offices of Scott H. Bernstein LLC
307 Seventh Avenue, Suite #1001
New York, New York 10001
*Local Counsel for Plaintiff Rodney Omanoff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RODNEY OMANOFF, | Civ. Act. No. |
| Plaintiff, | |
| v. | |
| BRADLEY CARL REIFLER, LISETTE LOU ACKERBERG, NANCY REIFLER, KELSEY REIFLER, COLE REIFLER, PAIGE REIFLER, FOREFRONT PARTNERS, LLC, FOREFRONT PARTNERS SHORT TERM NOTES LLC, FOREFRONT CAPITAL SERVICES, LLC, FOREFRONT CAPITAL HOLDINGS, LLC, FOREFRONT CAPITAL MARKETS, LLC, FOREFRONT CAPITAL ADVISORS, LLC, FOREFRONT ADVISORS, LLC, FOREFRONT TALKING CAPITAL INVESTMENTS, LLC, TALKING CAPITAL WINDUP LLC *f/k/a* TALKING CAPITAL LLC, LLC TALKING CAPITAL PARTNERS I, LLC, TALKING CAPITAL PARTNERS II, LLC, TALKING CAPITAL PARTNERS III, LLC, TALKING CAPITAL PARTNERS IV, LLC, KELCOP LP, KELCOP FAMILY LLC *a/k/a* KELCOP LLC, POCLEK LLC, YESLEK LLC, EGIAP LLC, ELOC LLC, BRADLEY REIFLER, NANCY REILFER, LISETTE ACKERBERG AND/OR JOHN DOES 1 AND 2, AS TRUSTEES of ACKERBERG IRREVOCABLE TRUST FBO KELSEY REIFLER, BRADLEY REIFLER, NANCY REILFER, LISETTE ACKERBERG AND/OR JOHN DOES 3 AND 4, AS TRUSTEES of ACKERBERG IRREVOCABLE TRUST FBO COLE REIFLER, BRADLEY REIFLER, NANCY REILFER, LISETTE ACKERBERG AND/OR JOHN DOES 5 AND 6, AS TRUSTEES of ACKERBERG | **COMPLAINT** |

IRREVOCABLE TRUST FBO PAIGE REIFLER,
BRADLEY REIFLER, NANCY REILFER AND/OR
JOHN DOES 7 AND 8, AS TRUSTEES of BRADLEY C.
REIFLER CHILDREN'S TRUST, BRADLEY REIFLER,
NANCY REILFER AND/OR JOHN DOES 9 AND 10, AS
TRUSTEES of BRADLEY C. REIFLER CHILDREN'S
TRUST NO. 1, LISETTE ACKERBERG LIVING
TRUST, BOWLES & JOHNSON PLLC, DAVID K.
BOWLES, ESQ., MARGARETT A. JOHNSON, ESQ.,
ZENITH GROUP ADVISORS, LLC,
PORT ROYAL – NCM, LLC,
FOREFRONT CAPITAL MANAGEMENT, LLC,
JANE DOES 1-10, JOHN DOES 1-10,
ABC COMPANIES 1-10 and XYZ PARTNERSHIPS 1-10,

        Defendants.
_____

## I.    NATURE OF THIS ACTION

1.    This is an action by Plaintiff for legal and equitable relief from a brazen campaign of serial misrepresentation, fraud and other unlawful activities conducted by Defendant Bradley Carl Reifler on a massive scale, over several years, and with the use of a myriad of shell, alter ego, nominal, unauthorized and legally dead limited liability companies, partnerships and trusts named herein as co-Defendants.

2.    The unprecedented actions and misdeeds of Defendants have caused millions of dollars of damages to Plaintiff, thousands of other individuals, as well as incalculable damage to the courts into which Defendant Reifler extends his ongoing fraudulent schemes in a campaign of abuse of process and fraud upon the Courts that is shocking to the conscience.

3.    Plaintiff by this Action seeks relief from fraud, material breaches of contract, securities and bank fraud, misrepresentation and deceit, forgery, embezzlement, misappropriation of funds, conversion and diversion of funds, fabrication of falsified business and financial documents, conflicts of interest, self-dealing, perjuries, civil conspiracy and other statutory and

common law violations committed by Defendant Reifler, and the persons or sham entities unlawfully funding, aiding and abetting him, and/or acting under his authority or control in violation of law and to the great detriment of Plaintiff, the Courts and the public.

4.     Upon information and belief, Reifler and the other Defendants have operated and funded an ongoing, multi-year enterprise of fraud and crime with full knowledge and intent to enrich themselves to the substantial detriment of Plaintiff, multiple third parties, multiple courts and numerous other governmental agencies.

5.     Upon information and belief, Reifler and the other Defendants conspired to grant Reifler unfettered control and use of ownership interests in and millions of dollars from the accounts of dozens of nominal, sham entities and purported family trusts, as if the funds in those accounts were his own.

6.     Upon information and belief, Reifler and the other Defendants have conducted an ongoing, criminal enterprise during the time periods of Reifler's insolvency between 2012 through 2016, continuing unabated through Reifler's Chapter 7 bankruptcy proceedings between 2017 and through the present.

7.     Upon information and belief, the number of fraudulent schemes and violations of law by Reifler and/or the other Defendants, during the foregoing time periods, upon individuals, other businesses and government officials, are staggering and too many to enumerate herein.

8.     Upon information and belief and as set forth herein, Reifler and the other Defendants substantially damaged Plaintiff and continued to damage Plaintiff by the sustained commission of the following misrepresentations, omissions and criminal acts, carried out for and to the unlawful benefit and enrichment of Reifler and the other Defendants:

(i)     Reifler and the other Defendants defrauded, delayed and hindered courts, governmental agencies and creditors to create the appearance

of the insolvent Reifler having tremendous wealth through his business success and knowhow; created marketing, advertisements and/or press releases to that effect;

(ii) they permitted Reifler to spend millions of dollars on himself and the other Defendants through his control of the accounts of dozens of nominal entities and purported trusts in their names, without repaying the IRS any part of the over $22 million he has owed for over 20 years;

(iii) spent millions of dollars on Reifler's luxury Manhattan residences at 116 West 14th Street, New York, New York 10011 and 5 East 17th Street – 4th Floor, New York, New York 10003 before where he has been domiciled for the near six years he has been Chapter 7 bankruptcy. In addition, while being personally insolvent, Reifler spent millions on the rental of the penthouse of The Fitzpatrick Hotel on Lexington Avenue for years and years as well as the mortgage of 147-acre house farm estate including its primary residential mansion and four-bedroom guesthouse in Millbrook, New York 12545;

(iv) spent millions of dollars over the course of several years on over a dozen attorneys from high-priced, national and international law firms, retained by Reifler and/or the other Defendants, and controlled by Reifler, to engage in, *inter alia*, bad faith and/or unlawful litigation or to ghostwrite for Reifler when he appeared *pro se* to avoid paying court ordered sanctions or creditors;

(v) conducted a multi-year criminal scheme and artifice to defraud and conceal fraud, carried out by, *inter alia*, forging and/or using unauthorized copies of Plaintiff's signature on debt instruments and using the other Defendant sham entities, including Talking Capital LLC— the company Reifler fraudulently induced Plaintiff and others into inviting him and his sham entity Forefront Partners to join— as an instrument in and unlawful source of funding for the Ponzi scheme;

(vi) Conducted a multi-year campaign of careful concealment of their misdeeds including, but not limited to, the concealment and/or permanent destruction of emails, documents and account records of the Defendants; and

(vii) they have committed, and continue to commit, multiple, felony criminal offenses of ongoing bankruptcy fraud, including conspiring to conceal the existence, funding and ownership interests in multiple, Ponzi scheme, sham and purported family trust and corporate entities from the courts and the Chapter 7 bankruptcy trustee, and using funds

from their accounts, which are controlled by Reifler while he is in bankruptcy, to file unlawful, frivolous and fraudulent litigation against Plaintiff, in violation of multiple federal criminal statutes.

9.      Defendant Reifler has been in Chapter 7 bankruptcy from January 2017 through the present.  During that time and before then, Defendant Reifler has continued to engage in an ongoing campaign of fraud, deceit, destruction of evidence and perjury knowingly supported and funded unlawfully by co-Defendants named herein.

10.      During his time in bankruptcy, Defendant Reifler has unlawfully received in excess of $20 million from co-Defendant family members, his alter ego entities and sham trusts, which he has used for unlawful purposes including, but not limited to, bankruptcy fraud, fraudulent aggressive litigation schemes, retention of multiple high-priced law firms and maintenance of a millionaire lifestyle.

11.      During his time in bankruptcy, and with the assistance and/or use of co-Defendant family members and sham entities, Defendant Reifler has spent or caused to be spent millions of dollars to pay for, *inter alia*, rental of his luxury Manhattan residences, retention of teams of the highest-priced New York attorneys for several years, and the funding and support of ongoing unlawful and fraudulent litigation filed by Defendant Reifler and his sham entities against Plaintiff in violation of law and the bankruptcy code.

12.      Plaintiff's introduction to Defendant Reifler came in or around 2013, approximately three and one-half years prior to Defendant Reifler filing Chapter 7 bankruptcy in January of 2017.

13.      In March 2014, a Certificate of Formation was filed to form Defendant Talking Capital LLC, a telecom financing company started by four individuals: Plaintiff Rodney Omanoff, Defendant Reifler, Mark Proto and Joseph Rahman.

14.      Plaintiff, Defendant Reifler and Proto entered into a contract, the Talking Capital

LLC Operating Agreement, with each of them signing as Managers of Talking Capital LLC.

15.     Defendant Reifler was one of three Managers of Talking Capital LLC.

16.     Since October 10, 2016, he has been the sole Manager of Talking Capital LLC.

17.     Defendant Reifler's wholly-owned company, Defendant Forefront Partners, LLC, was one of three Members of Talking Capital LLC.   Since October 10, 2016, Defendant Forefront Partners, LLC has been the sole Member of Talking Capital LLC.

18.     At the time of formation of Talking Capital LLC, Plaintiff was fraudulently induced to invite Defendant Reifler to join the telecom financing company by Defendant Reifler's misrepresentations and omissions regarding his FINRA licensure, his ability to raise capital and put in place legitimate lenders for the business, his promises of providing strict due diligence for the company, his financial industry knowhow, trustworthiness, Wallstreet reputation, business acumen and financial successes.

19.     At the time of formation of Talking Capital LLC, Proto and Rahman represented that they possessed the specific, niche telecom financing experience upon which the business was to be based.  Proto and Rahman provided the business model, the forms and templates, policy and procedures needed to conduct the business based on their combined past experience of fifty years as telecom professionals working in telecom industry, and they were to provide all the international telecom clients in need of the accounts receivable financing (*i.e.*, factoring) to be provided by Talking Capital LLC.

20.     Plaintiff's role at Talking Capital LLC was to be managerial and administrative in nature.

21.     Plaintiff was not aware nor could he have been aware at the time he entered into the Talking Capital LLC Operating Agreement in 2014 with Defendant Reifler that, *inter alia*, at

the time and/or in the following months Defendant Reifler would be under investigation for fraudulent schemes and criminal offenses by various governmental authorities, that he had voluntarily surrendered his FINRA license, or that Defendant Reifler had not paid taxes to the Internal Revenue Service (IRS) for the last ten years and owed it $22 million.

22.     Immediately after the business commenced and through the present day, Defendant Reifler, in a desperate attempt to pay off insurmountable debts of approximately $50 million (including the over $22 million owed to the IRS that he kept hidden from Plaintiff), used -- and continues to use to date -- the telecom finance company Defendant Talking Capital LLC, its sole member Defendant Forefront Partners LLC and dozens of other shell companies as instruments of fraud and crime to perpetuate what the Securities Exchange Commission and the United States Department of Justice define as a years old Ponzi Scheme..

23.     Defendant Reifler, as he committed these frauds and crimes using Defendants Talking Capital LLC, Forefront Partners, LLC and myriad of sham entities (with "Forefront" or "Talking Capital" in their names) simultaneously engaged in a campaign of permanent destruction of correspondence, emails, documents and other evidence of his misdeeds.

24.     Unbeknownst to Plaintiff, Defendant Reifler would, among other frauds and schemes, use forgeries of Plaintiff's signature, Defendant Talking Capital LLC, Defendant Forefront Partners LLC and the multiple sham entities also named as Defendants herein in order to fund, carry out and attempt to cover up complex, criminal Ponzi and bankruptcy fraud schemes.

25.     Unbeknownst to Plaintiff, Defendant Reifler would, among other frauds and illegal schemes, market and promote Talking Capital LLC's telecom business as a business wholly owned by his sham entities and then have investor funds transferred their investment capital to himself or one of his many sham entities named as Defendants herein, while charging fake

7

indebtedness to Talking Capital's telecom business, to deals with fake collateral that never existed.

26.    Unbeknownst to Plaintiff, Defendant Reifler would, among other frauds and schemes, use Defendants Forefront Partners and Talking Capital as instruments in massive fraud and attempted cover-ups of that fraud.

27.    Unbeknownst to Plaintiff, Defendant Reifler would, among other frauds and schemes, cause fake Talking Capital Promissory Notes and various pledges to be drafted with forgeries of Plaintiff's signature.

28.    Unbeknownst to Plaintiff, Defendant Reifler would, among other frauds and schemes, secretly encumber Defendant Talking Capital with approximately $10 million in debt based upon forged instruments and multiple and carefully concealed forgeries of Plaintiff.

29.    During 2015-2016, Defendant Reifler's fellow Managers of Talking Capital LLC, concluded Defendants Reifler and Forefront Partners LLC were in material breach of the Talking Capital LLC Operating Agreement.

30.    During 2015-2016, all the other Members and Managers of Talking Capital LLC, customers, lenders, telecom service providers, telecom brokers, all respective counsel of the above and our bank, First Republic Bank decided not to conduct any further business with Defendants Reifler, Forefront Partners LLC and Talking Capital LLC, and they thereafter resumed their telecom finance business without Defendants at a new company.

31.    Unbeknownst to Plaintiff, beginning in 2016 and sustained thereafter, Defendant Reifler engaged in an intentional campaign of concealment and permanent destruction of documents and emails regarding past and present transactions of Defendant Forefront Partners, Defendant Talking Capital LLC and the numerous other sham entities named as Defendants herein.

32.    Defendant Reifler carefully concealed multiple, intentional misrepresentations,

securities law violations, and material breaches of multiple contracts, and permanently destroyed correspondence and documents to conceal his misdeeds, which destruction of evidence has caused and continue to cause Plaintiff to incur substantial damages.

33.     Defendant Reifler's carefully concealed campaign of permanent destruction of documents and emails regarding his unlawful actions and misuse of Defendant Forefront Partners, Defendant Talking Capital LLC and the numerous other sham entities named as Defendants herein caused and continues to cause Plaintiff to incur substantial damages.

34.     On October 10, 2016, Plaintiff resigned from Defendant Talking Capital LLC.

35.     After receiving Plaintiff's resignation on October 10, 2016, Defendant Reifler unlawfully converted all funds from Defendant Talking Capital LLC, emptying its bank accounts immediately after Plaintiff's resignation was sent.

36.     After Plaintiff's resignation in October 2016, Defendants Reifler, Forefront Partners LLC and Talking Capital LLC never engaged or attempted to engage in Talking Capital LLC's telecom finance business again.

37.     On January 20, 2017, Defendant Reifler filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

38.     Defendant Reifler's bankruptcy schedules, as amended to date, reveal he has liabilities in excess of $50 million including, *inter alia*, over $22 million in due and owing but unpaid federal taxes to the IRS for tax years 2000 through 2021, a judgment in favor of JP Morgan Chase in excess of $6.1 million, as well as mortgages and judgments filed against his real property in excess of $15 million against less than $50,000 in assets.

39.     Neither Defendant Reifler's *Schedules of Assets* or *Statement of Financial Affairs* filed in his bankruptcy case disclose his membership interests in Defendant Forefront Partners, LLC, a single member limited liability company of which he was and remains the sole Member and owner, nor of Defendant Talking Capital LLC, the company wholly owned by Defendant Forefront Partners LLC and managed exclusively by Defendant Reifler.

40.     On February 24, 2017 (*i.e.*, just 35 days after he filed his Voluntary Petition for relief under Chapter 7), Defendant Reifler unlawfully signed and caused to be filed a Verified Complaint in the Supreme Court of New York, New York County, on behalf of Defendants Forefront Partners LLC and Talking Capital LLC, and against Plaintiff, among others.

41.     On February 24, 2017, the Debtor mispresented under oath in his Verified Complaint in the New York action that he held no ownership interest in Defendant Forefront Partners LLC.

42.     Defendant Reifler's concealed his ownership interest in his single member company Defendant Forefront Partners LLC from the SDNY bankruptcy court from January 2017 through March 15, 2022.

43.     Despite his misrepresentations in his Verified Complaint and Amended Verified Complaint he signed and filed in the New York State court, Defendant Reifler was and is the sole Member and owner of Defendant Forefront Partners, LLC.

44.     Despite his misrepresentations in *Schedules of Assets* and *Statement of Financial Affairs* he filed in the SDNY bankruptcy court, Defendant Reifler was and is the sole Member and owner of Defendant Forefront Partners, LLC.

45.     Defendant Reifler's bankruptcy fraud enabled him to file and maintain unlawful and fraudulent litigation against Plaintiff.

46.     Defendant Reifler's concealment, assertion of control and unlawful use of his bankruptcy estate's assets (*i.e.*, his single member entity Forefront Partners LLC and Talking Capital LLC) in order to file unlawful litigation against Plaintiff constitutes, *inter alia*, common law fraud and statutory bankruptcy fraud.

47.     Defendant Reifler's bankruptcy fraud scheme continues to exist to date to the detriment of the Courts, the public and Plaintiff, and continues to cause Plaintiff substantial damages.

48.     In June 2018, Defendant Talking Capital, a Delaware company, became inactive, remained inactive for years, and the State of Delaware sometime thereafter revoked the Charter of Defendant Talking Capital.

49.     Defendant Talking Capital Windup LLC f/k/a Talking Capital LLC was not legally registered as a foreign entity in New York or otherwise lawfully capable of filing or maintaining litigation against Plaintiff in the State of New York.

50.     In August of 2018, FINRA permanently barred Defendant Reifler from the securities industry based on FINRA's questions and conceal information and halt FINRA's investigation.

51.     On November 12, 2018, the Court entered an Order in *William K. Harrington, United States Trustee for Region 2 v. Reifler*, Adv. Proc. No. 17-09030 (CGM), denying Defendant Reifler's bankruptcy discharge on the grounds that he concealed, destroyed, mutilated, falsified, and failed to keep or preserve recorded information, including books, documents, records, and papers, from which his business transactions and transfers might be ascertained.

52.     Between 2016 and 2021, Defendant Reifler has been held in contempt of court no less than five times by this Court and other federal courts.

11

53.     On December 3, 2020, Defendant was indicted for fraud and perjury in connection with his use of Defendants Forefront Partners LLC, Defendant Talking Capital LLC and the numerous other sham entities named as Defendants herein, arrested by federal authorities and released on bail.

54.     On March 20, 2020, the SEC filed a complaint in the United States District Court, District of Nevada, against Defendants Reifler, Forefront Partners LLC and Forefront Capital Services LLC seeking, *inter alia*, a permanent injunction against Defendant Reifler, or any entity he owns or controls, from participating in the offering, sale or purchase of securities.

55.     During the timeframe between 2017 and 2022, Defendant Reifler provided testimony on numerous occasions, in multiple tribunals from multiple separate litigations, in which he denied ownership in Defendant Forefront Partners LLC.

56.     During the timeframe between 2017 and 2022, Defendant Reifler provided testimony on numerous occasions in which he vehemently denied fraudulent or criminal conduct.

57.     On August 10, 2021, Defendant Reifler testified that he "vehemently" denied the criminal charges against him, including allegations of forgery.

58.     On April 25, 2022, the United States Bankruptcy Court, Southern District of New York entered an Order preliminarily enjoining Defendants Reifler, Forefront, Talking Capital and any entities owned by these entities, from pursuing claims against Plaintiff in the New York state court action.

59.      The United States Bankruptcy Court, Southern District of New York's Order was based upon the findings that the entities owned by Defendant Reifler (*i.e.*, Defendants Forefront Partners LLC and Talking Capital LLC) became property and assets of the bankruptcy estate as of January 20, 2017, that Defendant Reifler had concealed those entities from the bankruptcy court

and that Defendant Reifler had unlawfully controlled those entities by filing litigation against Plaintiff in violation of law.

60.    On May 5, 2022, Defendant Reifler pled guilty in *USA v. Reifler*, 1:20-cr-00512-CCE, United States District Court for the Middle District of North Carolina, to felony wire fraud in connection with a scheme and artifice to defraud using Defendants Forefront Partners LLC, Defendant Talking Capital LLC and the numerous other sham entities named as Defendants herein.

61.    Included in the factual basis for his guilty plea is the confession by Defendant Reifler that, *inter alia*, he intentionally carried out a "scheme and artifice to defraud" by sending into interstate commerce pledge agreements that he knew were "false and fraudulent because they had not actually been signed" by the persons identified in the pledges as having signed them (*i.e.*, Plaintiff).

62.    Defendant Reifler caused Plaintiff's signature to be forged in the phony pledges that he has now confessed he intentionally and criminally sent into interstate commerce.

63.    Despite Defendant Reifler's ongoing Chapter 7 bankruptcy, his debt of over $22 million to the IRS, the federal SEC complaint against both him and Defendant Forefront Partners LLC, the criminal indictment against him and subsequent felony conviction by the US Department of Justice, the insurance fraud case of *North Carolina Mutual Life Insurance Co., Inc. v. Stamford Brook LLC, Bradley C. Reifler, Forefront, et al.* he continues his ongoing fraud against Plaintiff and commission of bankruptcy fraud by, *inter alia*, continuing since 2017 in his fraudulent litigation against Plaintiff through the present day with the same aforementioned sham entities named as Defendants herein.

64.    Despite Defendant Reifler's still ongoing Chapter 7 bankruptcy (filed in January 2017), his debt of over $22 million to the IRS, the federal SEC complaint against both him and

Defendant Forefront Partners LLC, his federal felony indictment in 2000 and subsequent 2022 felony conviction, Defendant Reifler has during the same time period and through the present resided in a luxury Manhattan apartment costing in excess of $22,000.00 per month in rent.

65.     Despite Defendant Reifler's still ongoing Chapter 7 bankruptcy, his debt of over $22 million to the IRS, the federal SEC complaint against both him and Defendant Forefront Partners LLC, the criminal indictment against him and subsequent conviction, Defendant Reifler has during the same time period retained the following attorneys to prosecute and defend various legal actions on behalf of himself individually and on behalf of his sham entities named as Defendants herein:   Bowles & Johnson (and its partners David Bowles and Margarett Johnson), Meister Seelig & Fein LLP (Kevin A. Fritz), Goldberg Weprin Finkel Goldstein LLP (Kevin J. Nash), K&L Gates (and its partners, Theodore Kornobis, Stephen Topetzes, Stavroula Elias Lambrakopoulos and Robert Silverblatt); the law firm of Cheshire Parker Schneider PLLC (Elliot S. Abrams), the law firm of Bell Davis & Pitt (Mark A. Jones); the law firm of Holland & Hart (and its attorneys Robert J. Cassity and Sydney Gambee); attorney Jeffrey H. Roth, Esq., attorney Michael Siegel, Esq. and the Law Offices of Neal Brinkman, Esq.

66.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant Reifler has been residing and continues to reside in an over $22,000 per month luxury Manhattan apartment and has retained and continues to retain over a dozen attorneys.

67.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant Reifler testified falsely that he had no money.

68.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant Reifler testified falsely that he was unable to pay sanctions ordered by the Court to be paid.

69.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant

Reifler testified falsely that he was unable to pay any of the tens of millions in judgments and claims of multiple creditors against him.

70.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant Reifler testified falsely that he was unable to afford, to pay and/or retain counsel.

71.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant Reifler testified falsely that he was reduced to selling his wife's jewelry just to live.

72.     During his Chapter 7 bankruptcy between 2017 and through the present, Defendant Reifler testified falsely that he was no longer in bankruptcy.

73.     Despite his written and oral testimony before multiple tribunals falsely claiming to have little or no money, Defendant Reifler has received and continues to receive substantial assistance in his campaign of numerous fraud and illegal schemes by corporate and/or family Defendants named herein.

74.     Despite his written and oral testimony before multiple tribunals falsely claiming to have little or no money, Defendant Reifler has received and continues to receive millions of dollars annually from corporate and/or family Defendants named herein.

75.     The corporate and/or family Defendants had actual knowledge of and assisted in the fraud by assigning property to their co-Defendants and by placing the proceeds of fraud beyond the reach of Plaintiff and other creditors, thereby causing Plaintiff harm and permitting Defendant Reifler to engage in a years-long campaign of fraud and deceit.

76.     Upon information and belief, Defendants have participated in a conspiracy to injure Plaintiff, without justification or right, and knowingly, willfully and purposely agreed and conspired to take the illegal and tortious actions described herein.

77.     Defendants engaged in a scheme to defraud, including acts of artifice and a pattern

of deceit which were and are intended to deprive Plaintiff of his money and to profit at his expense.

78.     Each Defendant has been employed by and/or associated with a fraudulent enterprise, participated directly or indirectly in its business by, *inter alia*, engaging in the illegal conduct set forth below, concealed as business transactions, including mail fraud, wire fraud, causing funds, false financial and other information to be conveyed through the mails and wires, the use of the mail and wire to further the fraud, conversion of assets and a concerted effort to destroy and conceal evidence thereof.

79.     There existed an agreement, and to this day exists an agreement, among Defendants to participate in a campaign of multiple frauds and violations of statute, intended to enrich them and unlawfully damage Plaintiff, which is ongoing in nature, and includes unprecedented abuses of process and the Courts that are shocking to the conscience.

## II.    JURISDICTION, PARTIES & VENUE

80.     This Court has original jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. §1332(a) as the parties in interest properly joined and served are citizens of different states, and the matter in controversy exceeds $75,000.00 as set forth below.

81.     This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C.§ 1331 and 18 U.S.C. § 1964(c)

82.     Plaintiff Rodney Omanoff is an individual domiciled in the State of Florida.

83.     Defendant Bradley Carl Reifler ("Reifler") is an individual domiciled in the State of New York.

84.     Defendant Nancy Reifler *a/k/a* "Nancy B. Ashford" or "Ash Reifler" is Reifler's spouse and is also domiciled in the State of New York.

85.     Defendant Lisette Lou Ackerberg is Reifler's mother and is domiciled in the State

of California.

86.     Defendant Kelsey Reifler is Reifler's adult daughter and is domiciled in the State of New York.

87.     Defendant Cole Reifler is Reifler's adult son and is domiciled in the State of New York.

88.     Defendant Paige Reifler is Reifler's adult daughter and is domiciled in the State of New York.

89.     Defendants Reifler, Ackerberg, Nancy Reifler, Kelsey Reifler, Paige Reifler and Cole Reifler are collectively referred to herein as the "Reifler Family Defendants").

90.     Defendant Forefront Partners LLC ("Forefront") is nominally a limited liability company formed in the State of Delaware.

91.     Reifler is the sole Member and Manager of Forefront.

92.     Reifler has misrepresented under oath the ownership of Forefront on multiple occasions.

93.     Reifler has testified falsely that he did not own Forefront.

94.     Reifler has testified falsely that he held no ownership interest in Forefront.

95.     Reifler has testified falsely that Forefront was owned, in part, by Defendant Ackerberg.

96.     Reifler has testified falsely that Forefront was owned, in part, by Defendant Kelcop LP.

97.     Reifler has testified falsely that Forefront was owned, in part, by Defendant Forefront Capital Holdings, LLC.

98.     Defendant Forefront Capital Holdings, LLC is nominally a limited liability

company formed in the State of Delaware, controlled by Reifler.

99.     Upon information and belief, Defendant Forefront Capital Holdings LLC was at all relevant times owned by Defendants Kelcop LP (85%) and Ackerberg (15%).

100.     As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Forefront Capital Holdings LLC to be a cancelled limited liability company.

101.     Defendant Forefront Capital Markets, LLC is nominally a Delaware limited liability company formed and managed by Reifler.

102.     As of the date of the filing of this Complaint, the State of Delaware has declared Forefront Capital Markets, LLC to be a cancelled limited liability company and has revoked its corporate charter.

103.     Defendant Forefront Capital Services, LLC is nominally a Delaware limited liability company formed and managed by Reifler.

104.     As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Forefront Capital Services, LLC to be a cancelled limited liability company and has revoked its corporate charter.

105.     Defendant Forefront Capital Advisors, LLC is nominally a Delaware limited liability company formed and managed by Reifler.

106.     As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Forefront Capital Advisors, LLC to be a cancelled limited liability company and has revoked its corporate charter.

107.     Defendant Forefront Advisors, LLC is nominally a Delaware limited liability company formed and managed by Reifler.

108.     As of the date of the filing of this Complaint, the State of Delaware has declared

Defendant Forefront Advisors, LLC to be a cancelled limited liability company and has revoked its corporate charter.

109.    Defendant Forefront Partners Short Term Notes LLC is nominally a Delaware limited liability company formed and managed by Reifler.

110.    As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Forefront Partners Short Term Notes LLC to be a cancelled limited liability company and has revoked its corporate charter.

111.    Defendant Forefront Talking Capital Investments, LLC is nominally a Delaware limited liability company formed and managed by Reifler.

112.    As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Forefront Talking Capital Investments, LLC to be a cancelled limited liability company and has revoked its corporate charter.

113.    Defendant Talking Capital Windup LLC *f/k/a* Talking Capital LLC ("Talking Capital" or "Talking Capital Windup") is nominally a Delaware limited liability company of which Reifler is the sole Manager and Forefront the sole Member.

114.    Talking Capital was formed in 2014.

115.    The State of Delaware declared Talking Capital to be a cancelled limited liability company in June 2018.

116.    After three years of being in cancelled status, the State of Delaware revoked Talking Capital's corporate charter in June 2021.

117.    The company formerly known as Talking Capital LLC was reinstated and changed its name to Talking Capital Windup LLC in October 2021.

118.    Talking Capital Windup's sole member is Forefront.

119.    Forefront's sole member is Reifler.

120.    As of the date of the filing of this Complaint, Talking Capital Windup has ceased to have good standing in the State of Delaware.

121.    Defendant Talking Capital Partners I, LLC ("TCP I") is nominally a Delaware limited liability company.

122.     TCP I's sole member is Talking Capital.

123.    Talking Capital's sole member is Forefront.

124.    Forefront's sole member is Reifler.

125.    As of the date of the filing of this Complaint, the State of Delaware has declared TCP I to be a cancelled limited liability company and has revoked its corporate charter.

126.    Defendant Talking Capital Partners II, LLC ("TCP II") is nominally a Delaware limited liability company.

127.    TCP II's sole member is Talking Capital.

128.    Talking Capital's sole member is Forefront.

129.    Forefront's sole member is Reifler.

130.    As of the date of the filing of this Complaint, TCP II has ceased to have good standing in the State of Delaware.

131.    Talking Capital Partners III, LLC ("TCP III") is nominally a Delaware limited liability company.

132.    TCP III's sole member is Talking Capital.

133.    Talking Capital's sole member is Forefront.

134.    Forefront's sole member is Reifler

135.    As of the date of the filing of this Complaint, TCP III has ceased to have good

standing in the State of Delaware.

136.    Defendant Talking Capital Partners IV, LLC ("TCP IV") is nominally a Delaware limited liability company.

137.    TCP IV's sole member is Talking Capital.

138.    Talking Capital's sole member is Forefront.

139.    Forefront's sole member is Reifler.

140.    As of the date of the filing of this Complaint, the State of Delaware has declared TCP IV to be a cancelled limited liability company and has revoked its corporate charter.

141.    Defendant Zenith Group Advisors, LLC, a Delaware limited liability company, was formed on May 24, 2017.  Upon information and belief, this entity was funded with laundered money from the Reifler sham entities which used and misrepresented Talking Capital's business as a marketing tool to fraudulently induce investors to invest into the sham entities so he could perpetuate his years old Ponzi Scheme.

142.    Defendant PORT ROYAL – NCM, LLC is a Delaware limited liability company.

143.    Defendant Forefront Capital Management, LLC is a Delaware limited liability company.

144.    Upon information and belief, Reifler has incorporated or has caused to incorporate several other entities in the State of Delaware that have the words "Forefront" and/or "Talking Capital" in their corporate names (these entities and other unknown entities are hereinafter referred to as ABC Companies 1 through 10 and XYZ Partnerships 1 through 10).

145.    Upon information and belief, Reifler directed and/or coerced certain employees and individuals to carry out and/or assist in carrying out multiple frauds and other unlawful activities, including wire fraud, bank fraud and forgery (these individuals are hereinafter referred to as Jane

Does 1 through 10) (Defendants Forefront, Forefront Capital Holdings, LLC, Forefront Capital Markets, LLC, Forefront Capital Management, LLC, Forefront Capital Services, LLC, Forefront Capital Advisors, LLC, Forefront Advisors, LLC, Forefront Partners Short Term Notes LLC, Forefront Talking Capital Investments, LLC, Talking Capital, TCP I, TCP II, TCP III, TCP IV, Zenith Group Advisors LLC, PORT ROYAL – NCM, LLC, Jane Does 1 through 10, ABC Companies 1 through 10, and XYZ Partnerships 1 through 10  are hereinafter collectively referred to as the "Ponzi Scheme Entities").

146.    Defendant Bowles & Johnson PLLC is a domestic professional service limited liability company with offices located at 14 Wall Street, 20th Floor, New York, New York 10005.

147.    Defendant David K. Bowles, Esq. is a member of Bowles & Johnson PLLC and a resides within New York County, New York.

148.    Defendant Margarett A. Johnson, Esq. is member of Bowles & Johnson PLLC and transacts business within New York County, New York.

149.    Defendants Bowles & Johnson PLLC, David K. Bowles, Esq., and Margarett A. Johnson, Esq. (collectively, the "Attorney Defendants") are counsel to a number of the Ponzi Scheme Entities including Forefront, Talking Capital, TCP I, and TCP II.

150.    Through the Ponzi Scheme Entities, Reifler directs and control the Attorney Defendants to carry out and/or assist him and the Ponzi Scheme Entities in carrying out multiple frauds and other unlawful activities for his own personal benefit.

151.    The Attorney Defendants willingly participate in and assist Reifler and the Ponzi Scheme Entities in carrying out multiple frauds and other unlawful activities for their own monetary benefit.

152.    As part of their participation and assistance with Reifler and the Ponzi Scheme

Entities in carrying out multiple frauds and other unlawful activities, they use legal process to assert material factual statements that are false and presented in calculated deceptive and misleading ways and use legal process to perverted manner to obtain a collateral objective in a pending action against Plaintiff,

153.    Reifler controls the Ponzi Scheme Entities.

154.    Reifler used and uses the Ponzi Scheme Entities unlawfully for his own personal use and/or the use of unrelated companies.

155.    Reifler used the Ponzi Scheme Entities to fund, support, conduct and/or conceal a multimillion-dollar criminal Ponzi scheme.

156.    Reifler's unlawful use of the Ponzi Scheme Entities has caused Plaintiff damages.

157.    Defendant Kelcop LP is a Delaware limited partnership formed and managed by Reifler.

158.    Defendants Kelcop Family LLC, Nancy B. Ashford, Kelsey Reifler, Cole Reifler and Paige Reifler hold and/or held ownership in Defendant Kelcop LP.

159.    Defendant Kelcop LP is named after and combines the first letters from the first names of Reifler's three children, "KEL" from Kelsey, "CO" from Cole and "P" from Paige, respectively.

160.    Reifler has testified falsely that Kelcop LP is a trust.

161.    As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Kelcop LP to be a cancelled limited partnership.

162.    Defendant Kelcop Family LLC is a Delaware limited liability company formed and managed by Reifler.

163.    As of the date of the filing of this Complaint, the State of Delaware has declared

Defendant Kelcop Family LLC to be a cancelled limited liability company and has revoked its corporate charter.

164.    Defendant Egiap LLC is a Delaware limited liability company formed and managed by Reifler.

165.    Defendant Egiap LLC is named for Reifler's adult daughter Defendant Paige Reifler, and is her first name spelled backwards.

166.    As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Egiap LLC to be a cancelled limited liability company and has revoked its corporate charter.

167.    Defendant Poclek LLC is a Delaware limited liability company formed and managed by Reifler.

168.    Defendant Poclek LLC is also named for Reifler's adult children and is "Kelcop" spelled backwards.

169.    As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Poclek LLC to be a cancelled limited liability company and has revoked its corporate charter.

170.    Defendant Yeslek LLC is a Delaware limited liability company formed and managed by Reifler

171.    As of the date of the filing of this Complaint, the State of Delaware has declared Defendant Yeslek LLC to be a cancelled limited liability company and has revoked its corporate charter (Defendants Kelcop LP, Kelcop Family LLC, Egiap LLC, Poclek LLC, Yeslek LLC and Zenith Group Advisors, LLC are hereinafter collectively referred to as the "Sham Family Companies").

172.   Reifler controls the Sham Family Companies.

173.   Reifler used and uses the Sham Family Companies unlawfully for his own personal use and/or the use of unrelated companies.

174.   Reifler used the Sham Family Companies to fund, support and/or conduct a vast, multimillion-dollar criminal Ponzi scheme.

175.   Reifler's unlawful use of the Sham Family Companies has caused Plaintiff damages.

176.   Defendants Reifler, Ackerberg, Nancy Reifler and/or John Does No. 1 and 2 are named as defendants in their individual capacities and as current or former trustees or co-trustees of Defendant Ackerberg Irrevocable Trust FBO Kelsey Reifler (the "Kelsey Reifler Trust").

177.   Defendants Reifler, Ackerberg, Nancy Reifler and/or John Does No. 3 and 4 are named as defendants in their individual capacities and as current or former trustees or co-trustees of Defendant Ackerberg Irrevocable Trust FBO Cole Reifler (the "Cole Reifler Trust").

178.   Defendants Reifler, Ackerberg, Nancy Reifler and/or John Doe No. 5 and 6 are named as defendants in their individual capacities and as current or former trustees or co-trustees of Defendant Ackerberg Irrevocable Trust FBO Paige Reifler (the "Paige Reifler Trust").

179.   Defendant Ackerberg is named as defendant in her individual capacity and as current or former trustee or co-trustee of Defendant Lisette Ackerberg Living Trust (the "Ackerberg Trust").

180.   Defendants Reifler, Nancy Reifler and/or John Doe Nos. 7 and/or 8 are named as defendants as the current or former trustees of the "Bradley C. Reifler Children's Trust."

181.   Defendants Reifler, Nancy Reifler and/or John Doe Nos. 9 and/or 10 are named as defendants as the current or former trustees of the "Bradley C. Reifler Children's Trust Number

1" (the Kelsey Reifler Trust, the Cole Reifler Trust, the Paige Reifler Trust, the Bradley C. Reifler Children's Trust, the Bradley C. Reifler Children's Trust Number 1, and the Ackerberg Trust are collectively referred to herein as the "Sham Family Trusts").

182.    Reifler and/or Ackerberg control the Sham Family Trusts.

183.    Reifler and/or Ackerberg used and uses the Sham Family Trusts unlawfully for their own personal use and/or the use of unrelated companies.

184.    Reifler and/or Ackerberg used the Sham Family Trusts to conduct, support and fund a vast, multimillion-dollar criminal Ponzi scheme.

185.    Reifler and/or Ackerberg's unlawful use of the Sham Family Trusts has caused Plaintiff damages.

186.    The Reifler Family Defendants, the Ponzi Scheme Entities, the Sham Family Companies, the Sham Family Trusts and the Attorney Defendants are hereinafter collectively referred to as the "Reifler Group" or "Reifler Conspirators").

187.    Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendants transact business within this judicial district.   Likewise, a substantial part of the events giving rise to the claims occurred within this judicial district.

### III.    STATUTORY AND REGULATORY PROVISIONS

188.    The Racketeer Influenced and Corrupt Organizations Act ("RICO") is codified as Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 to 1968.

189.    When it enacted RICO, Congress included a civil remedy provision that allows private parties to sue for injuries to their "business or property" caused "by reason of" a defendant's violation of RICO.  18 U.S.C. §§ 1964(c).  The civil remedy provision requires a plaintiff to prove: (1) a violation of a § 1962 prohibited act; (2) injury to business or property; and (3) that the

defendant's violation caused the injury.

190.     Under the civil remedy provision, a private plaintiff may sue in state or federal court to recover treble damages and attorney fees caused by a RICO violation.

191.     18 U.S.C. § 152, entitled *Concealment of Assets; False Oaths and Claims; Bribery*,  is intended to prevent and punish the knowing and fraudulent concealment of property belonging to a bankruptcy estate, the knowing and fraudulent making of a false oath or account in or in relation to any case under title 11; the knowing and fraudulent making of a false declaration, certificate, verification, or statement; and the knowing and fraudulent presentment any false claim for proof against the estate of a debtor

192.     18 U.S.C. § 152, entitled *Bankruptcy Fraud*, is intended to prevent and punish any person who devises or intends to devise a scheme or artifice to defraud, and for the purpose of executing or concealing such a scheme or artifice:  files a petition under title 11; files a document in a proceeding under title 11; or makes a false representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition.

## IV.    FACTS

### A.    <u>Background of Talking Capital & the Telecom Factoring Business</u>

193.     In or around 2012, Plaintiff met Mark Proto and Joseph Rahman, who represented themselves as experienced in the business of providing short term financing to telecommunications companies based upon those companies offering their accounts receivable as collateral (*i.e.*, telecom factoring).

194.     The telecom factoring business the two men described to Plaintiff was largely based upon the accounts receivable generated and owed from one telecommunications company to another telecommunications company whenever international telephone calls are completed.

195.     Millions of international telephone calls are completed daily between various

telecommunications companies, such as AT&T, Verizon and a multitude of other similar companies.

196.    Whenever this occurs, one telecom carrier owes the other carrier money for this service, thereby generating accounts receivable.

197.    Smaller telecom carriers performing such services are limited in how many calls they can carry because of delay in payment, with most such companies having to wait at least thirty calendar days for payment on their accounts receivable from the date of each daily invoice.

198.    Proto and Rahman's business model was specifically based upon providing factoring based upon such accounts receivable, by borrowing money from third parties, using that borrowed money to purchase accounts receivable at a discounted rate, and thereafter collect the full amount owed on each account receivable. The telecom factoring business would profit from the difference between the discounted receivable purchase price it paid and the full receivable price it later collected.

199.    Proto and Rahman represented that because of their vast experience and telecom network of relationships in the telecom industry they had many wholesale telecom companies that needed such accounts receivable factoring; that they had all the forms and templates needed to conduct such a business; and further that Rahman had written proprietary software that could monitor all telephone traffic in real time to ensure that the invoiced amount of telephone calls was actually being completed, in order to avoid fraud or overbilling issues.

200.    Between 2012 and 2014, Plaintiff researched the telecom industry, reviewed the forms, templates, software and telecom factoring business proposal of Proto and Rahman.

**B.     Reifler's Initial Misrepresentations *vs.* the Truth He Carefully Concealed**

201.    In From December 2013 – March 2014, Plaintiff discussed the telecom factoring

proposal of Proto and Rahman with Reifler.

202.     Even though Plaintiff advised Reifler at the time that Plaintiff himself had no experience in the telecommunications industry or telecom factoring business, Reifler responded that it was the best business proposal he had ever seen, that he could easily obtain financing and capital needed to launch the business, and that the business could generate tremendous wealth.

203.     Between January and March 2014, Reifler made a series of misrepresentations in order to induce Plaintiff, Proto and Rahman to permit Reifler to join them in the planned telecom factoring business.

204.     Reifler represented he was an expert in structured finance and due-diligence-related analysis, as well as having a sterling reputation within the finance industry.

205.     Reifler represented he was the grandson of Ray E. Friedman, the founding- partner of Refco, a prominent New York financial services company where, he advised Plaintiff, he had worked alongside his grandfather and "learned the business."

206.     Reifler represented he was a FINRA-registered securities broker, subject to the highest levels of business propriety, due diligence and regulatory compliance.

207.     Reifler represented to Plaintiff that he founded and operated a vast conglomerate of companies he collectively called the "Forefront Capital Group," with each Forefront company having its own financial specialty and purpose.

208.     These companies, according to Reifler, included Defendant Forefront Capital Markets, LLC, a FINRA licensed, regulated broker-dealer, which Reifler represented could issue securities to one or more institutional, individual or corporate accredited investors; make introductions to investors, business combinations and clients; prepare and organize necessary due diligence materials and data room for potential investors; draft and prepare marketing and offering

materials; develop financial and valuation analysis; advise and assist on alternative financing structures and arrangements; and provide other corporate financial advisory and investment banking services.

209.     Reifler also represented that his company Defendant Forefront Partners, LLC was the "merchant banking" entity within the Forefront group of companies, and that it also provided necessary due diligence and compliance services and materials.

210.     Reifler also advised that Defendant Forefront Capital Markets, LLC was one of his companies and also owned another FINRA-registered securities broker called Forefront Capital Management, LLC

211.     Reifler took Plaintiff on a tour of an impressive 25,000 square foot of offices located on the 34th floor of 590 Madison Avenue – 34th Floor, in New York, NY, which he represented was the corporate headquarters for his "Forefront Capital Group" of companies.

212.     Reifler represented that the dozens of individuals working at these offices were all employed by Reifler directly or indirectly through Reifler's various Forefront entities, and included legal, compliance, marketing, auditing, due diligence, bookkeeping, brokerage, execution and trading, investment banking, prime brokerage services, and support operations.

213.     Reifler represented that he could and would put these purported Forefront specialty entities at the disposal of the proposed telecom factoring company.

214.     Reifler represented to Plaintiff that he had accumulated enormous wealth due to his business acumen, connections and successes.

215.     Reifler gave Plaintiff a tour of both his luxury three bedroom penthouse hotel apartment on 57th Street in New York, NY, and his massive, $20 million, 147-acre ranch in Milbrook, NY, that he had named "Sky Blue Farm," replete with ten-bedroom Main House, horse

stables, indoor riding arena, ice skating rink, movie theater and shooting range, motor cross track, four-bedroom Guest House, Olympic size swimming pool

216.    Reifler represented that he commuted to work in Manhattan by helicopter, chauffeured limousine or in his customized Mercedes-Benz sprinter van (featuring sleeping accommodations).

217.    In March 2014, before Plaintiff agreed to go forward in the telecom factoring business, Reifler represented that he had already procured several financing opportunities for the business through his company, which financing would be available as early as the next month.

218.    Based on the foregoing promises of financing, Proto and Rahman delivered at least four separate telecom companies that were ready, willing and able to sell their accounts receivable at a discount, so long as there was financing lined up to purchase them.

219.    Based upon Reifler's foregoing representations, Plaintiff, Proto and Rahman agreed to go forward with the proposed telecom factoring business with Reifler, to form a limited liability company, and to name the company Talking Capital LLC

220.    On March 24, 2014, a Certificate of Formation was filed with the Delaware Secretary of State, forming the limited liability company named Talking Capital LLC.

221.    Thereafter, Plaintiff, Reifler and Proto entered into a written agreement, the Talking Capital LLC Operating Agreement, with each individual signing as a Manager of Talking Capital LLC.

222.    Ownership of Talking Capital LLC was divided among its Members, which were each limited liability companies owned or managed by the Managers of Talking Capital.

223.    Specifically, the Members of Talking Capital were Reifler's company Defendant Forefront Partners LLC, Plaintiff's company Omanoff America Telecom, LLC and Proto and

Rahman's company Mudmonth LLC.

224.     Reifler represented at the time of formation of Talking Capital LLC that Reifler held a 78% ownership interest in Forefront Partners LLC, with remaining ownership interests held by Christopher E. Engel, the President of Forefront Capital Management LLC, and Reifler's mother Defendant Lisette Ackerberg, which was submitted to Talking Capital LLC's bank as part of the bank's compliance and due diligence for all new accounts.

225.     Upon information and belief, Reifler's representations set forth above in this Complaint regarding his FINRA registration status and that of his entities, which he intended Plaintiff to rely upon and Plaintiff did so rely upon in his decision to work with Reifler, were knowingly false when made.  Upon information and belief, Forefront Capital Management, LLC's New York State securities registration had been canceled, and it would lose its SEC status in a matter of months after the formation of Talking Capital LLC in January 2015.

226.     Upon information and belief, Reifler had engaged in unlawful and/or improper activity prior to the formation of Talking Capital LLC, which he kept hidden from Plaintiff and was not a matter of public record, which would lead to his voluntarily surrender of his FINRA registration for Forefront Capital Markets, LLC, and that of his entities sometime in 2015 soon after Talking Capital commenced business.

227.     Reifler kept hidden from Plaintiff his unlawful activity leading to the surrender of his and his entities FINRA registration, as well as his ultimate loss of registered status.

228.     Plaintiff would have never have agreed to conduct or have continued to conduct business with Reifler had he known the truth regarding Reifler and FINRA.

229.     FINRA registration was critical to Plaintiff's decision to go forward with and stay in business with Reifler because Plaintiff relied upon it to ensure that Reifler and his company

Defendant Forefront Partners would comply with FINRA and SEC rules and regulations in their business dealings.

230.    To date, FINRA has permanently barred Reifler and the SEC has an action pending against Reifler seeking his permanent ban from the securities industry.

231.    Upon information and belief, Reifler's representations set forth above in this Complaint regarding his creation and operation of a vast conglomerate of companies he collectively called the "Forefront Capital Group," with each Forefront company having its own financial specialty and purpose, with dozens of employees working out of his large Madison Avenue office, which representations he intended Plaintiff to rely upon and Plaintiff did so rely upon in his decision to work with Reifler, were knowingly false when made.

232.    Upon information and belief, the myriad of entities formed by or at the direction of Reifler with the name "Forefront" in them were the Ponzi Scheme Entities, which were shell, cancelled and/or legally dead or defunct, nominal entities used to create the false appearance of corporate capabilities, assets, debts, and/or return on or initial investments.

233.    Upon information and belief, the Ponzi Scheme Entities were the alter egos of Reifler.

234.    Upon information and belief, the people at the offices of the Ponzi Scheme Entities were, with few exceptions, not employees of Reifler or the Ponzi Scheme Entities, but instead just unrelated subtenants.

235.    Upon information and belief, the Ponzi Scheme Entities were never funded properly, their corporate formalities never observed, they were created with the intent to defraud Plaintiff and third parties, they never possessed the specialty services, staff or capabilities presented, and their assets were treated as the personal property of Reifler, distributed to him

personally, to the Ponzi Scheme Entities, the Reifler Family Defendants and/or the Sham Family Entities.

236.    Upon information and belief, Reifler never intended to use the Ponzi Scheme Entities to assist Talking Capital LLC as he represented he would to Plaintiff and as described above in paragraphs 190-196 of this Complaint.  Plaintiff would never have agreed to conduct or have continued to conduct business with Reifler had he known the truth regarding the true nature of the Ponzi Scheme Entities and that they never were ready, willing or able to act or provide services in the manner described by Reifler.

237.     Upon information and belief, Reifler's representations set forth above in this Complaint regarding his tremendous wealth and business successes, which representations he intended Plaintiff to rely upon and Plaintiff did so rely upon in his decision to work with Reifler, were knowingly false when made.

238.    Upon information and belief, at the same time these representations of enormous wealth were made, Reifler was insolvent, had not paid income tax to the IRS for over twenty years and owed over $22 million in unpaid tax.

239.    Upon information and belief, Reifler did not own the properties he showed to Plaintiff and/or Reifler was in the process of unlawfully transferring ownership and creating fake liens on of those properties with and to Defendant Ackerberg, other Defendants named herein or third parties in a desperate and illegal attempt to defraud creditors.

240.    Plaintiff would not have commenced or continued business with Reifler had he known Reifler had not paid taxes in twenty years, that Reifler was insolvent, and that Reifler was not a successful businessman he represented and presented himself to be.

241.    Upon information and belief, Reifler's representations set forth above in this

Complaint regarding his procurement financing opportunities for Talking Capital LLC, available as early as April 2014, which representations he intended Plaintiff to rely upon and Plaintiff did so rely upon in his decision to work with Reifler and cause the Certificate of Formation for Talking Capital to be filed, were knowingly false when made.

242.     Upon information and belief, Reifler's representations set forth above in this Complaint regarding ownership of his proposed Member for Talking Capital LLC, his company Defendant Forefront Partners LLC, which representations he intended Plaintiff to rely upon and Plaintiff did so rely upon in his decision to work with Reifler, were knowingly false when made. Upon information and belief, Defendant Forefront was not owned by several people including Defendant Ackerberg, it was a single member, shell entity that was the alter ego of Reifler, with no legitimate business purpose, used to commit fraud and commit crimes.

243.     Plaintiff would not have commenced or continued business with Reifler and formed Talking Capital had he known the foregoing omissions and truths concealed by Reifler.

244.     Plaintiff justifiably relied upon Reifler's fraudulent inducements to commence business with him and to form Talking Capital LLC.

245.     Plaintiff has suffered substantial detriment and damages as a result of commencing business with Reifler based upon the foregoing intentional, deceitful and deal-breaking omissions and misrepresentations made by Reifler.

246.     Plaintiff has suffered substantial detriment and damages as a result of continuing in business with Reifler based upon the foregoing intentional, deceitful and deal-breaking omissions and misrepresentations made by Reifler.

**C.      Reifler's Ponzi Scheme and his Destruction of Talking Capital LLC**

247.     At the commencement of business at Talking Capital LLC in 2014, immediately

thereafter, and through its short life as an ongoing business through October 2016, Reifler engaged is multiple fraudulent acts and schemes using Defendants Talking Capital, Forefront and the other Ponzi Scheme Entities.

248.     Reifler's schemes and artifice to defraud ultimately destroyed the telecom factoring business, caused Plaintiff to incur substantial damages, destroyed the oldest African American life insurance company in the nation, caused losses in excess of $34 million dollars and resulted in Reifler being federally indicted and convicted of felony wire fraud, and put Summit Trust Company into Receivership, only never to recover after misappropriating their $6 million dollar investment into Talking Capital's business by converting their funds for his own use personal and business uses,.

249.     Reifler directed and/or controlled the Reifler Family Defendants, Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts and their respective accounts.  He used those entities and people, and their accounts, as his own personal banks, unlawfully withdrawing and/or transferring millions of dollars from and to them before and during his bankruptcy in order enrich the Reifler Conspirators, to the detriment of Plaintiff and creditors, and to fund his Ponzi scheme and other fraudulent endeavors.

250.     Reifler controlled and/or directed the Reifler Conspirators in a scheme whereby he fraudulently induced investors, would pay off himself, the Reifler Conspirators or other earlier investor victims with new victim money, thereby preventing discovery and  encouraging additional and larger investments.

251.     Reifler used telecom factoring company Talking Capital, and its member Forefront, to conduct vast fraud that he actively, carefully and successfully concealed, and directed others associated with Defendants, to conceal from Plaintiff.  Reifler's misdeeds, fraud and crimes

destroyed the business and damaged Plaintiff.

252.     Upon information and belief, between 2014 through October 2016, from the inception of Talking Capital and Reifler's contractual relationship with Plaintiff, Reifler used Talking Capital investor money to pay off earlier investors or the Reifler Conspirators.

253.     Upon information and belief, within one month of Plaintiff and Reifler signing the Operating Agreement for Talking Capital LLC, unbeknownst to Plaintiff, a married couple, Karen and Doug McFarland of Westminster, MD, sought to invest $200,000 in Talking Capital's telecom factoring business and were, unbeknownst to Plaintiff, directed to transfer their $200,000 to Defendant Forefront Partners instead of Talking Capital.

254.     Specifically, Reifler fraudulently induced the McFarlands to finance a specific telecom accounts receivable arising from the calls of telecommunications carriers Verizon and IKBS.  At the time Reifler made such representations to the McFarlands, the Verizon and IKBS factoring deal had already been financed by other financial institutions. Reifler's Forefront Partners had no ownership interest over the Verizon and IKBS accounts receivable purchased thereunder.

255.     Based upon his multiple misrepresentations to Plaintiff and the McFarlands, Reifler converted the McFarland and Talking Capital monies and then diverted them to his wholly-owned, single member company, Defendant Forefront Partners LLC.

256.     Upon information and belief, in furtherance of his Ponzi scheme and before the McFarland fraud, Reifler falsely claimed he obtained $1,000,000 for investment in Talking Capital from an individual named Bob Beyer, who has denied ever making such an investment. Instead, upon information and belief, a hidden investor named Mark Fisher invested $500,000 into a Forefront entity which was laundered as part of the unknown $1,000,000 investment. The

remaining $500,000 investment is still unknown to this day.   Some of those funds were used to repay a portion of the McFarlands' investment and/or to make it appear they were receiving return on their investment.  Upon information and belief, Reifler also used those funds to pay his single member, wholly owned Defendant Forefront Partners LLC, as well as other of the Reifler Conspirators he controlled.

257.     Upon information and belief, Reifler used Defendant Forefront Partners and the Reifler Conspirators to engage in similar acts of fraud as against Plaintiff and other third parties.

258.     Reifler destroyed emails, account information and documents regarding the McFarland, Beyer and other Ponzi scheme transfers and misrepresentations between 2014 and 2016, and continued to destroy and/or otherwise obstruct and make sworn misrepresentations regarding similar such documents through the present.

259.     Reifler's Ponzi scheme and the Reifler Conspirators also converted monies from investors and financial backers that had financed actual Talking Capital telecom factoring deals, and were due for repayment after the telecom company borrowers repaid their accounts receivable loans.

260.     Also in 2014, Talking Capital obtained its first, multimillion dollar lender, Summit Trust Company., to finance its telecom factoring deals.  On the eve of the transfer of $6 million by Summit Trust Company to Talking Capital, Reifler represented to Plaintiff that Summit had made the last-minute demand that the money not be transferred to Talking Capital, but instead to a different entity that Reifler had formed, on his own and unbeknownst to Plaintiff, which entity was Defendant Forefront Talking Capital Investments, LLC.

261.     Upon information and belief, Reifler's representation that Summit Trust Company demanded that the $6 million not be transferred to Talking Capital, and instead be sent

to Defendant Forefront Talking Capital Investment, LLC, were false.

262.    Despite Reifler's misrepresentation, upon information and belief the reality was that, in February of 2015, Reifler misappropriated Summit's $6 million that he told Summit would only be used to provide the short-term factoring financing to Talking Capital's telecommunications company clients.  Plaintiff was under the impression that Reifler returned those funds, but instead Reifler converted those funds into a company called Port Royal-NCM LLC, wholly owned by Reifler as an interim step to completely steal their $6M of investment capital for his own business and personal use.

263.    Upon information and belief, Reifler instead misappropriated the $6 million and used the funds to: (i) support unrelated real-estate development projects in which he had a personal interest ($1.75 million); and (ii) purchase the rights to manage the investments of a reinsurance trust owned by North Carolina Mutual Insurance Company ($4.25 million), which had a $34 million portfolio of assets.

264.    As far as Plaintiff knew at the time, the factoring deals Summit Trust purportedly financed went forward, and then Reifler misappropriated the $6 million due to be repaid to Summit Trust Company for its financing of telecom factoring loans that had now been repaid.

265.    In or about January 2015, Reifler advised Plaintiff that he wanted to use the $6 million from Summit to gain access to and control over a $34 million insurance fund, which insurance fund monies he represented could be used to finance Talking Capital telecom factoring deals.

266.    In or about March 2015, Reifler wrote to Plaintiff about an "insurance deal" involving a fund in North Carolina which held $34 million that Reifler represented could be used to finance Defendant Talking Capital.

267.    After hearing Reifler's explanation of the proposed insurance deal, Plaintiff advised Reifler that it sounded risky, rife with conflict of interest and unlikely to pass regulatory muster, and that if Reifler involved Talking Capital or Plaintiff, then Plaintiff would end the business and sever ties with Reifler.

268.    On March 28, 2015, Reifler promised he would not involve Plaintiff or Talking Capital with the insurance deal and/or  wrote to Plaintiff that he would have zero involvement.

269.    Upon information and belief, Reifler proceeded with the insurance deal, making misrepresentations and committing felony fraud so proceeding.

270.    Upon information and belief, Reifler purportedly became responsible in 2015 for investing an approximate $34.2 million reinsurance portfolio for North Carolina Mutual Life Insurance Company.

271.    In 2016, Reifler defrauded and deceived North Carolina Mutual Life Insurance Company into believing that its millions of dollars of assets were secured by sending it false and fraudulent pledge agreements of Defendant Talking Capital, Ponzi Scheme Entities and/or other fictional, nonexistent, unauthorized and/or legally dead entities.

272.    In order to cover up his frauds and crime, between 2015 and 2016, Reifler created and used or caused to be created and used fabricated and/or phony Talking Capital documentation for deals and illegal transfers, from and to the Reifler Conspirators, other individuals and/or purported entities that never existed.

273.    In violation of law, Reifler controlled the North Carolina Mutual Life Insurance Company's assets for the benefit of his own companies.

274.    Reifler caused false and fraudulent pledge agreements to be sent in interstate commerce, for the purposes of executing a scheme and artifice to defraud the North Carolina

Mutual Insurance Company, using Defendants Forefront Partners, Talking Capital and/or some or all of the Ponzi Scheme Entities and other fictional, nonexistent and/or unauthorized entities. Reifler knew at the time that those pledge agreements were false and fraudulent because they had not actually been signed by the counterparties identified in the documents, which included multiple false signatures of Plaintiff.

275.    When Reifler lost and/or used all of North Carolina Mutual Life Insurance Company's money, he attempted to blame the forgeries and/or loss on various third parties, including his assistant, his employees, Plaintiff and his partner in the insurance deal, Steven W. Fickes.

276.    On or about September 10, 2016, Reifler filed a false, sworn complaint to the F.B.I., in which he swore that:  Reifler and Defendant Forefront Partners were the victims of Steven W. Fickes; that Mr. Fickes was the perpetrator of the Talking Capital forgeries; and that Mr. Fickes misappropriated $34 million from North Carolina Mutual Life Insurance Company, which Reifler claimed and noted in his complaint was the "oldest African-American insurance company in the US."

277.    During the life of Talking Capital, Plaintiff was under constant pressure by Reifler to engage in opaque or poorly explained business ventures or actions, often which seemed to Plaintiff to be attempts by Reifler to evade rules, regulations, conflicts of interests and law. Plaintiff always resisted this pressure by Reifler, demanding detailed explanations and refusing to permit Talking Capital to proceed with any action that was unlawful or even had the appearance of impropriety.

278.    Plaintiff, unlike Reifler, had a pristine reputation, had no unmanageable debt, always paid his taxes, had never committed any wrongdoing or even been accused of doing so,

was solvent, was never involved in civil, regulatory or criminal actions, as a, defendant or witness. Plaintiff is an honest man who wanted to keep his reputation intact, and he always refused to agree to Reifler's schemes when they sounded improper or dishonest.

279.    In or about October 2016, Plaintiff became fully aware that Reifler had involved Talking Capital in the insurance deal when an individual named Steven W. Fickes wrote to Plaintiff inquiring about it, indicating that Reifler had broken his promise to Plaintiff no to involve the company.

280.    At the same time Plaintiff was advised in 2016 of Talking Capital involvement in the insurance fund, that Reifler promised him in 2015 would not occur, Plaintiff suspected other, material breaches of the Talking Capital Operating Agreement by Defendants Forefront Partners and Reifler.  Plaintiff also was wary of constant pressure by Reifler to engage in conflict-ridden and opaque business acts and deals.

281.    In or about the same time period in 2015 - 2016, Talking Capital's biggest source of finance for telecom factoring directed that it would no longer work or fund any businesses associated with Reifler or Defendant Forefront Partners, including Talking Capital, and needed an orderly plan of cooperation to get its investment capital returned and away from Reifler and his sham businesses

282.    For all the foregoing reasons and others too numerous to set forth herein, Plaintiff sent his written resignation from Talking Capital to Reifler on October 10, 2016.  The other Members and Managers of Talking Capital also parted ways with Defendants Reifler, Forefront Partners and Talking Capital.

283.    Immediately after Plaintiff's October 10, 2016 resignation, Reifler converted all funds in the Talking Capital bank accounts for his personal use and/or the use of the Reifler

Conspirators.

284.     Upon information and belief, in the months that followed, Reifler attempted to and did destroy emails, documents and other evidence of his schemes to defraud.

285.     Reifler was criminally prosecuted for emailing forged Talking Capital pledges and his artifice to defraud using Defendant Talking Capital, Forefront Partners and other of the Ponzi Scheme Entities.  Reifler pled guilty to felony wired fraud arising out these allegations.

286.     The Securities and Exchange Commission filed an action against Reifler, Defendant Forefront Partners LLC and Defendant Forefront Capital Services LLC arising out of his misrepresentations and misappropriation of the Summit Trust Company monies, the forged pledges and his artifice to defraud using Defendant Talking Capital, Forefront Partners and other of the Ponzi Scheme Entities.  The SEC seeks to ban Reifler for life.

**D.     Reifler Commits Multiple Crimes to File Baseless and Costly Litigation Against Plaintiff**

287.     Upon information and belief, in the years before and during the short life of Defendant Talking Capital LLC as a going telecom factoring business from March 2014 to October 2016, Reifler was legally insolvent.

288.     Upon information and belief, between 2014 and January 19, 2017, Reifler unlawfully transferred or caused to be transferred in excess of $30 million to the Reifler Conspirators.

289.     During this same period in which he was transferring million to the Reifler Conspirators, Reifler submitted false sworn written declarations and falsely testified before this tribunal and other federal and state courts that he had no money to pay courts costs and sanctions ordered against him, attorneys or creditors.

290.     Within approximately two months of Plaintiff's resignation from Talking Capital

LLC, in a case brought against Reifler by one of his many creditors, J.P. Morgan Chase Bank, Reifler, appearing before this Court *pro se*, stated on the on record he had no funds to pay for counsel.  On December 20, 2016, this Court held Reifler in contempt of court and ordered him to make a payment  by January 20, 2017.

291.    On January 20, 2017, Reifler did not pay or otherwise obey the contempt order, but instead filed Chapter 7 Bankruptcy in the United States Bankruptcy Court, Southern District of New York ("SDNY Bankruptcy Court").

292.    Reifler committed multiple frauds upon the filing of Chapter 7 bankruptcy in this District.

293.    The first proof of claim filed in his bankruptcy in the SDNY after the $22,982,518.68 IRS claim was a $6,000,000.00 claim by Reifler's mother Defendant Ackerberg, followed by over $30 million worth of claims of other creditors.

294.    The filing of the proof of claim for $6,000,000 by Defendant Ackerberg constituted a fraud on the United States Bankruptcy Court for the Southern District of New York.

295.    Defendants Ackerberg and Reifler conspired to commit fraud upon the United States Bankruptcy Court for the Southern District of New York by filing a false, $6,000,000 claim on behalf of Defendant Ackerberg and against Reifler.

296.    The $6,000,000 claim filed by Defendant Ackerberg in Reifler's Chapter 7 bankruptcy proceeding was based upon a judgment obtained by Defendant Ackerberg in the Supreme Court of New York, Dutchess County, in the same amount, against Reifler.

297.    The $6,000,000 judgment entered in the Supreme Court of New York, Dutchess County, was obtained by the commission of fraud upon the Supreme Court of New York by Defendants Ackerberg and Reifler.

298.    In order to obtain her fraudulent, $6 million judgment against her son Reifler, Defendant Ackerberg submitted and/or caused to be submitted false declarations and/other court filings to the Supreme Court of New York which contained misrepresentations regarding her right to a judgment under the law.

299.    Another fraud committed by Reifler at the commencement of his bankruptcy, and continued for years thereafter through March 15, 2022, was Reifler's failure to disclose and his making affirmative representations regarding his sole-ownership of several of the Ponzi Scheme Entities, including Defendant Forefront Partners, LLC.

300.    Reifler did not disclose in his schedules or statements filed in the SDNY Bankruptcy Court that he was the sole owner of the single member entity Defendant Forefront Partners LLC.

301.    On February 24, 2017, the next month after filing Chapter 7 bankruptcy, Reifler signed and caused to be filed a Verified Complaint by Defendant Forefront Partners LLC against Plaintiff and others in the State of New York, Supreme Court, New York County, Commercial Division.

302.    In his Verified Complaint filed against Plaintiff on February 24, 2017 in New York state court, executed by Reifler the same date, Reifler expressly, affirmatively and falsely swore under penalty of perjury that he was a non-member of or otherwise did not hold an ownership interest in Defendant Forefront Partners LLC.

303.    Reifler filed and/or caused to be filed an Amended Complaint June 16, 2017 against Plaintiff in New York state court, executed by Reifler the same date, which also expressly, affirmatively and falsely swore under penalty of perjury that he was a non-member of or otherwise did not hold an ownership interest in Defendant Forefront Partners LLC.

304.     On March 15, 2022, Reifler confessed in sworn testimony that he is and always was the sole-owner of Forefront Partners LLC.

305.     Reifler failed to disclose his ownership of Forefront Partners LLC in the SDNY Bankruptcy Court, and filed a sworn to, written representation affirmatively denying ownership in Forefront Partners to the New York state court, but Reifler was, in fact, the sole owner of Forefront Partners LLC at the time he made those false sworn statements and filings.

306.     Upon information and belief, between January 20, 2017 and February 24, 2017, Reifler committed, at a minimum and no less than, the following three criminal acts in order to unlawfully attack Plaintiff with frivolous and costly state court litigation:

- Reifler committed statutory bankruptcy fraud when he failed to disclose Forefront Partners LLC as an asset belonging to his Chapter 7 bankruptcy estate;

- Reifler committed perjury when he signed, had witnessed and caused to be filed a Verified Complaint and an Amended Verified Complaint on behalf of Forefront Partners LLC in New York state court, in which he falsely swore under oath that he held no ownership interest in Forefront Partners LLC; and

- Reifler committed statutory bankruptcy fraud when he unlawfully controlled a bankruptcy asset -- his wholly owned, single member Forefront Partners LLC -- by his filing of Verified Complaint and then an Amended Verified Complaint in Forefront's name and on its behalf.

307.     Upon information and belief, in or before 2016 and through the present, Reifler engaged in a campaign of destruction of evidence of his misdeeds, including the permanent deletion of his emails, documents and business records relating to his past misrepresentations, to Defendant Forefront Partners LLC and the Ponzi Scheme Entities, the Reifler Family Defendants, the Sham Family Companies and the Sham Family Trusts.

308.     As revealed in Dept. of Justice filings in 2021 and 2022 in the federal criminal

case against Reifler, expert review of the forensic evidence and Reifier's actions revealed that Reifler destroyed, and attempted to destroy emails, documents, document folders on his electronic device and other evidence, including such documentation with his names, the names of Defendants Forefront Partners LLC, Forefront Talking Capital Investments LLC and other Ponzi Scheme Entities, as well as the names and titles associated with the parties and pattern of fraudulent deals and crime in this action, and evidence relating to other Reifler accomplices and associates in his campaign of fraud.

309.    Immediately after the December 20, 2016 hearing before this Court in which he was held in contempt of court and ordered to pay sanctions and monies owed, Reifler started performing numerous Google Searches on how to permanently delete data and emails.

310.    The Dept. of Justice expert affidavit filed on December 20, 2021 further revealed Reifler intentionally destroyed evidence by, inter alia, deleting files and also installing "Eraser" software program intended to permanently delete information.  After he used Eraser to delete information permanently, in an attempt to cover up his deletion activities, Reifler uninstalled the Eraser software from his device.

311.    Upon information and belief, Reifler also retained IT professionals to delete emails. Documents and other evidence relating to him, the Reifler Conspirators and/or their misdeeds.

312.    In a January 20, 2022 sworn declaration filed in conjunction with the latest order holding Reifler in contempt of court for failure to produce documents, Reifler swore he had no access to documents, devices and other information regarding his purported business activities because all of his phones and computers were seized by governmental

authorities and never returned.

313.    In addition to his destruction of documents, correspondence and other evidence, Reifler attempted to continue and cover up his bankruptcy fraud by testifying falsely under oath.

314.    Reifler attempted to continue and cover up his bankruptcy fraud by testifying falsely under oath in his fraudulent New York state court litigation in 2021 that he was no longer in bankruptcy.  This testimony by Reifler was false testimony and given at a time in which he indisputably was still in bankruptcy.  This testimony by Reifler was false and intended to deceive the New York State Court into permitting his unlawful state court action to proceed in violation of clear bankruptcy and other law.

315.    Reifler's unlawful state court litigation on behalf of Ponzi Scheme Entities against Plaintiff was illegally filed after Reifler had filed Chapter 7 bankruptcy.

316.    Reifler's unlawful state court litigation on behalf of Ponzi Scheme Entities against Plaintiff is frivolous and based upon perjury and material misrepresentations and omissions.

317.    Reifler's unlawful state court litigation on behalf of Ponzi Scheme Entities against Plaintiff has been costly to defend and caused Plaintiff to incur substantial damages.

318.    Reifler's unlawful state court litigation on behalf of Ponzi Scheme Entities against Plaintiff is based upon frivolous assertions by Reifler that Plaintiff violated doctrines of equity by separating himself from and moving on in his work without Defendants Forefront Partners, Talking Capital, Reifler and the Ponzi Scheme Entities.

319.    Plaintiff separating himself from Reifler and the Ponzi Scheme Entities was a necessity for Plaintiff, not a basis for liability against him for Reifler to exploit fraudulently

with unlawful litigation.   Plaintiff's decision to separate came after several, sustained breaches of fiduciary duty, material breaches of contract and crimes committed by the Ponzi Scheme Defendants and Reifler.   Plaintiff's decision to resign from Talking Capital LLC and cut ties with Reifler and the Ponzi Scheme Entities was legal and sound, based, *inter alia*, upon:

- the decision of the company's biggest lender not to conduct any future business with Reifler or the Ponzi Scheme Entities;

- the decision of the other Members and Managers not to conduct any further business with Reifler or the Ponzi Scheme Entities;

- Reifler's concealment of his involving Talking Capital and Plaintiff in transactions that Reifler promised Plaintiff in 2015 he would not involve them in;

- Gross and multiple of misrepresentations about Talking Capital's business to the public

- Constant pressure by Reifler on Plaintiff to engage in conflict-ridden and opaque business acts and deals, and his anger directed at Plaintiff when Plaintiff requested reasonable details; and

- Plaintiff suspicion that Reifler was using Talking Capital to fund his Ponzi Scheme Entities and other, material breaches of the Talking Capital Operating Agreement by Defendants Forefront Partners and Reifler.

320.   Any equitable duties that may have once been owed by Plaintiff to Reifler by virtue of their entering the Talking Capital Operating Agreement were extinguished in their entirety by the foregoing acts of Reifler and his New York litigation against Plaintiff based upon such claims are as audacious and they are frivolous.   Separation from Reifler by Plaintiff was and is not a basis for liability, it was an act that was reasonable, logical, lawful and no less than a matter of survival and preservation of liberty for Plaintiff, one of many efforts he was forced to take to avoid criminal prosecution and other liability caused by his

association and misuse by Reifler.

321.    On May 4, 2018, the SDNY Bankruptcy Court *North Carolina Mutual Life Insurance Company v. Reifler*, Adv. Proc. No. 17-09016 (CGM), found that Reifler knowingly and fraudulently made a false oath and account in connection with the case.

322.    On November 12, 2018, the Court in *William K. Harrington, United States Trustee for Region 2 v. Reifler*, Adv. Proc. No. 17-09030 (CGM), entered an Order denying Defendant Reifler's bankruptcy discharge on the grounds that he concealed, destroyed, mutilated, falsified, and failed to keep or preserve recorded information, including books, documents, records, and papers, from which his business transactions and transfers might be ascertained.

323.    On March 20, 2020, the Securities and Exchange Commission filed a Complaint in United States District Court, District of Nevada, against Defendants Forefront Partners, LLC, Forefront Capital Services LLC and Reifler, seeking, *inter alia*, to bar him for life for his fraudulent schemes and destruction of evidence.

324.    On November 30, 2020, a federal grand jury indicted Reifler for multiple felony crimes, including crimes relating to schemes to defraud, proposed schemes to defraud, artifice to defraud and perjury involving some and/or all of the Ponzi Scheme Entities.

325.    After his arrest, Reifler's mother Defendant Ackerberg posted $100,000, unsecured bond for Reifler's bail.

326.    Pursuant to the December 3, 2020 terms of the *Order Setting Conditions for Release*, Reifler's release from federal custody was dependent upon the following conditions of release:    Reifler's surrender of his passport; Reifler not traveling outside of

SDNY/EDNY/MDNC and points in between for travel to court; Reifler not having any contact with certain associates, employees and/or agents of the Ponzi Scheme Entities; Reifler not managing any funds belonging to other people or entities; and the condition that Reifler must not violate federal, state or local law while on release.

327.   After Reifler signed the *Order Setting Conditions for Release* on or about December 3, 2020, and agreed to the condition set forth therein that he must not violate federal, state or local law while on release, Reifler committed several violations of federal, state or local law.

328.   Reifler committed multiple instances of perjury after December 3, 2020, including, but not limited to, those instances set forth in this Complaint.

329.   After December 3, 2020, Reifler testified under oath multiple times in his unlawful civil action against Plaintiff, without assertion of his 5th Amendment right against self-incrimination.

330.   On August 10, 2021, in his unlawful civil case against Plaintiff, Reifler committed perjury when he denied under oath the factual basis for, and all criminal charges made against him in, the federal criminal complaint filed against him.

331.   On May 5, 2022, Reifler pled guilty to the criminal charge of felony wire fraud, admitting to an artifice to defraud using Ponzi Scheme Entities and documents with Plaintiff's forged signature, and confessing to the factual basis for the crime as set forth in the criminal complaint against him.

332.   Reifler's August 10, 2021 testimony in his civil case against Plaintiff, made under oath and in which he denied the same facts he admitted on May 5, 2022 in the criminal trial, is perjury.

333.    Also after his December 3, 2020 agreement and condition of release not to violate any local, state or federal law, Reifler committed and attempted to conceal and cover-up his ongoing bankruptcy fraud through multiple acts and omissions.

334.    Reifler's unlawful acts and omissions after December 3, 2020 include, but are not limited to, concealment and assertion of control over bankruptcy estate assets and monies, including unlawful control over the Ponzi Scheme Entities to file improper litigation against Plaintiff.  Reifler's post-December 2020 concealment and assertion of control over bankruptcy estate assets and monies constitutes bankruptcy fraud, a violation of federal law and a federal crime, designated as a felony and punishable by imprisonment under federal law.   Based on these violations of law, on April 25, 2022, the United States Bankruptcy Court, Southern District of New York, entered an Order preliminarily enjoining Reifler and the Ponzi Scheme Entities from pursuing claims against Plaintiff in the New York state court action.

335.    After Reifler signed the *Order Setting Conditions for Release* on or about December 3, 2020, and agreed to the condition set forth therein that he not manage any funds belonging to other people or entities, he violated that order by maintaining control over Defendants Forefront Partners LLC, Talking Capital LLC and other Ponzi Scheme Entities by engaging them in, *inter alia*, unlawful business transactions and unlawful litigation against Plaintiff.

336.    After Reifler signed the *Order Setting Conditions for Release* on or about December 3, 2020, and agreed to the condition set forth therein that he not manage any funds belonging to other people or entities, upon information and belief, he continued to manage the affairs and funds of the Reifler Family Defendants, the Ponzi Scheme Entities, the Sham

Family Companies and the Sham Family Trusts.

337.     After Reifler signed the *Order Setting Conditions for Release* on or about December 3, 2020 and agreed to the condition set forth therein that he not manage any funds belonging to other people or entities, and during Reifler's ongoing Chapter 7 bankruptcy and through the present, his debt of over $22 million to the IRS for decades of unpaid taxes has gone unpaid, while Reifler has, upon information and belief, directed, controlled and/or spent millions of dollars paying for his residence in a luxury Manhattan apartment costing in excess of $22,000.00 per month in rent.

338.     After Reifler signed the *Order Setting Conditions for Release* on or about December 3, 2020 and agreed to the condition set forth therein that he not manage any funds belonging to other people or entities, and during Reifler's ongoing Chapter 7 bankruptcy and through the present, his debt of over $22 million to the IRS for decades of unpaid taxes has gone unpaid, while Reifler has, upon information and belief, directed, controlled and/or spent millions of dollars paying for no less than twelve attorneys to prosecute and defend various legal actions on behalf of himself individually and the Ponzi Scheme Entities: Bowles & Johnson PLLC (and its members David Bowles, Esq. and Margarett Johnson, Esq.),  Meister Seelig & Fein LLP (Kevin A. Fritz), Goldberg Weprin Finkel Goldstein LLP (Kevin J. Nash), K&L Gates (and its partners, Theodore Kornobis, Stephen Topetzes, Stavroula Elias Lambrakopoulos and Robert Silverblatt); the law firm of Cheshire Parker Schneider PLLC (Elliot S. Abrams), the law firm of Bell Davis & Pitt; the law firm of Holland & Hart (and its attorneys Robert J. Cassity and Sydney Gambee); attorney Jeffrey H. Roth, Esq., attorney Michael Siegel, Esq. and the Law Offices of Neal Brinkman, Esq.

339.     Between 2014 and the present, Reifler testified falsely under oath on

numerous occasions that he had no money, that he was unable to pay court-ordered sanctions against him due to lack of money, and that was unable to afford or retain counsel.

340.    Reifler has received and continues to receive substantial assistance in his campaign of numerous fraudulent and illegal schemes from the Reifler Conspirators, which he controls and/or directs for his personal benefit, to the substantial detriment of Plaintiff and the mockery of this federal tribunal, the SDNY Bankruptcy Court and Courts of the State of New York.

341.    Upon information and belief, between 2012 and through the present, Reifler received and continues to receive millions of dollars annually from the Reifler Conspirators and/or uses them to hide and conceal money from the courts and creditors.

342.    The Reifler Conspirators had actual knowledge of and assisted in the fraud by assigning property to Reifler and/or their co-Defendants and by placing the proceeds of fraud beyond the reach of Plaintiff and other creditors, thereby delaying legal proceedings and permitting Defendant Reifler to engage in a years-long campaign of fraud and deceit, which enriched Reifler and caused substantial harm to Plaintiff.

### E.    The Reifler Conspirators Knowingly and Substantially Assist Reifler and Engage in a Pattern of Crime and Fraud Upon Plaintiff and the Courts

343.    The Reifler Conspirators engaged in a pattern of funding Reifler's fraudulent schemes, delaying creditors to stave off bankruptcy through fraudulent acts so that Reifler could maintain his false façade of solvency, success and tremendous wealth to deceive Plaintiff.

344.    When Reifler did not have funds sufficient to maintain his Ponzi scheme, he followed a pattern of purportedly "borrowing" money from his mother's trust, the Sham Family Companies and/or the Reifler Conspirators.

345.    In order to maintain a life of luxury, enrich himself and spend millions of dollars on himself and attorneys and ongoing schemes, Reifler also uses, directs and/or controls the Reifler Conspirators, their assets and accounts.

346.    Reifler also uses the Reifler Conspirators to keep his assets out of reach of the courts and/or creditors, which permits their ongoing funding, financial and/or other unlawful support of ongoing fraudulent endeavors and litigation.

347.    The appearance of wealth and success Reifler and his massive Sky Blue Farm estate projected when he gave Plaintiff tours at the inception of their relationship, and the actual reality and truth of his failure to pay the IRS taxes for over a decade and a half, and irrecoverable insolvency, are in stark and undeniable conflict.

348.    At the same time Plaintiff was considering entering into business and commence operations at Talking Capital with Reifler, Defendants Ackerberg and Reifler were carrying out a scheme to delay Reifler's creditors and defraud the court in order to enrich themselves unlawfully, to maintain the false appearance of Reifler wealth and ownership of the sprawling estate Sky Blue and, at the same time, defraud and induce Plaintiff into agreeing to commence business with Reifler and going forward with that business.

349.    Upon information and belief, in or around March through May 2014, at the same time, Plaintiff and Reifler were launching Talking Capital LLC, Reifler and Defendant Ackerberg were preparing false, backdated demand notes for $6,000,000, creating fraudulent liens on Sky Blue in Defendant Ackerberg's favor, and defrauding the New York State Supreme Court, Dutchess County, by filing false judgments in Defendant Ackerberg's name against Reifler in the same amount.

350.    Defendants Ackerberg and Reifler's filing of and/or causing to be filed an application for judgment, based on a false demand note and false loan default, constituted a fraud upon the Dutchess County court.

351.    Furthermore, the alleged $6 million purported loan from Defendant Ackerberg to Reifler upon which the Dutchess County judgment was based did not exist. Upon information and belief, $6 million was wired from Defendant Kelsey Reifler Irrevocable Trust and not Defendant Ackerberg.  In furtherance of their unlawful schemes to hide assets and enrich themselves, Defendant Kelsey Reifler signed an agreement which purportedly authorized Defendant to borrow monies from the Kelsey Reifler Irrevocable Trust.  This is but one of many examples of the lengths to which the Reifler Conspirators went to in order to support and fund Reifler and his unlawful and artifice to defraud and ongoing bankruptcy fraud of litigating against Plaintiff.

352.    This fraud upon the Court was committed by Defendants Ackerberg, Reifler and the Reifler Conspirators was intended by them to delay, hinder and defraud creditors so that Reifler could maintain a false appearance of solvency and have later access to the funds in question through his mother Defendant Ackerberg.

353.    Defendants Ackerberg, Reifler and the Reifler Conspirators sought to and did, in fact, unlawfully delay, hinder and defraud creditors in order to permit Reifler to pursue his campaign of fraud using the newly formed Talking Capital and the Ponzi Scheme Entities, all to Plaintiff's great detriment.

354.    Immediately before his January 2017 bankruptcy, while he and Plaintiff were engaged in business at Talking Capital, Reifler purportedly transferred millions of dollars to the Reifler Conspirators.  During the same period, Reifler transferred his membership

interests in Sham Family Companies, including, but not limited to, transferring his interest in Defendant Kelcop Family LLC *a/k/a* Kelcop LLC to his wife, Defendant Nancy Reifler for $10.00, making her its only member, and Reifler its only Manager. This Kelcop LLC transfer is another example of Reifler controlling assets that he falsely represents he does not own, yet thereafter using them as if he does, for his benefit and to the ongoing detriment of Plaintiff.

355.    As with Defendant Forefront Partners LLC, Reifler has testified under oath regarding ownership of Defendant Kelcop LLC and has provided wildly different testimony on the subject.  He has testified that his wife only owned Defendant Kelcop LLC, he has testified that his daughter Defendant Kelsey Reifler was the sole owner, and he has testified that Defendants Nancy Reifler, Kelsey Reifler, Cole Reifler and Paige Reifler were "limited partners" of Defendant Kelcop LLC, even though Defendant Kelcop was a limited liability company and not a limited partnership.

356.    Upon information and belief, Reifler was always and remains the sole owner and manager of Defendant Kelcop LLC.

357.    Upon information and belief, Defendant Kelcop is the alter ego of Reifler.

358.    Upon information and belief, the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts are the alter egos of Reifler.  The Reifler Conspirators intentionally misrepresent ownership and control of these entities in an effort to shield Reifler's assets from bankruptcy, have those assets on hand for Reifler's unlawful use, and to provide unlawful support to Reifler in his ongoing artifice to defraud Plaintiff, third parties and the courts.

359.    Reifler has admitted under oath that he regularly invaded and paid monies

from Defendant Kelcop and one or more of the Sham Family Companies and/or Sham Family Trusts.

360.    Reifler regularly transferred monies to one or more of the Sham Family Trusts and the Sham Family Companies before and during his Chapter 7 bankruptcy proceedings.

361.    Reifler also directed payments or third parties to direct payments for him or for his benefit into the bank accounts of Defendant Kelcop LLC, the Sham Family Trusts and the Sham Family Companies before and during his Chapter 7 bankruptcy proceedings.

362.    Reifler directed monies owed to him to the Sham Family Trusts and the Sham Family Companies Trusts, including Defendant Kelcop LLC and the Kelsey Reifler Trust, and freely used accounts he controlled to pay his own personal expenses and to make subsequent transfers to himself or the Ponzi Scheme Entities he either owned, managed, controlled and/or operated for his benefit.

363.    Without regard to actual names of represented ownership or management of record of the Ponzi Scheme Entities, the Sham Family Companies and/or the Sham Family Trusts, Reifler enjoyed and enjoys full and complete control of the dozens of bank accounts associated with these entities.

364.    In the six-year period prior to the Reifler filing bankruptcy on January 20, 2017, Reifler made transfers totaling over $10 million into accounts belonging to the Reifler Conspirators.

365.    In the five-year period since he filed bankruptcy filing bankruptcy on January 20, 2017, Reifler controlled, made use of and/or received the benefit of transfers totaling over $10 million from the accounts belonging to the Reifler Conspirators.

366.     Reifler and the Reifler Conspirators did not maintain records or other documentation to support the unlawful transfers made prior to and during Reifler's bankruptcy.

367.     Upon information and belief, what records Reifler may have had were deleted or destroyed by Reifler in order to conceal the transfers.

368.     Reifler improperly funneled money to and from the Reifler Conspirators through unlawful transfers during his bankruptcy and continuing to date.

369.     Reifler improperly transferred interests of his property to and from the Reifler Conspirators through unlawful transfers during his bankruptcy and continuing to date.

370.     Reifler remitted unlawful transfers to or for the direct benefit of the Reifler Conspirators.

371.     Reifler intended the unlawful transfers to benefit the Reifler Conspirators.

372.     Reifler knew he had existing unsecured creditors, including Plaintiff, at the time of each unlawful transfer.

373.     The Reifler Conspirators caused and/or allowed Reifler to make the unlawful transfers, and they received benefit resulting from the said transfers from Reifler.

374.     The Reifler Conspirators should not have accepted the unlawful transfers, or related benefits from Reifler.

375.     The Reifler Conspirators did not accept the unlawful transfers or benefits derived therefrom in good faith.

376.     The Reifler Conspirators knew, or should have known, that the unlawful transfers and benefits arising therefrom from Reifler were improper.

377.     Upon information and belief, the Reifler Conspirators knew of Reifler's

massive frauds at the time they accepted the unlawful transfers from Reifler.

378.    Upon information and belief, the Reifler Conspirators did not provide reasonably equivalent value, fair consideration or any consideration or value in exchange for the unlawful transfers.

379.    Upon information and belief, Reifler did not receive reasonably equivalent value in exchange for the unlawful transfers to the Reifler Conspirators, and the Reifler Conspirators did not receive reasonably equivalent value in exchange for unlawful transfer from or on behalf of Reifler.

380.    Reifler made unlawful transfers for illegitimate purposes and the Reifler Conspirators knew that Reifler made those transfers.

381.    At the time of the unlawful transfers, the Reifler Family Defendants knew that Reifler was their son, husband, father or managing and controlling member or trustee.

382.    Upon information and belief, the Defendants knew that, at the time of the unlawful transfers, unsecured creditors of Reifler existed and were unpaid by Reifler.

383.    The Reifler Conspirators acted as nominees for Reifler and held proceeds from unlawful transfers to or for the benefit of Reifler.

384.    The Reifler Conspirators knew they were holding the unlawful transfers for Reifler.

385.    Reifler siphoned the millions of dollars in unlawful transfers to the Reifler Conspirators to keep his property beyond the reach of his creditors and to permit his unlawful campaign of fraud upon the courts and Plaintiff to commence and proceed, for his benefit and enrichment, and to the great detriment of Plaintiff and the public.

386.    Upon information and belief, Reifler exercised, and continues to exercise,

sole and exclusive dominion and control over the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts, their activities and assets.   Upon information and belief, Reifler exercised absolute control over their conduct and used such control to work an injustice upon Plaintiff and the courts.

387.   Upon information and belief, at all times relevant, Reifler completely dominated and controlled the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts.

388.   By virtue of the foregoing, the Ponzi Scheme Entities, Sham Family Companies and/or the Sham Family Trusts are the alter ego of Reifler.

389.   Reifler used the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts as his instrumentality by commingling and/or diverting funds with or among them for his personal benefit and for unlawful and improper purposes.

390.   Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts were inadequately capitalized or capitalized with Reifler's assets.

391.   Upon information and belief, all of the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts, with the exception of Defendant Forefront Partners LLC, are companies that are not in good standing, companies that have had their corporate charter revoked, companies that have been cancelled, never formed, fictional and/or legally dead.

392.   Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts shared common control, ownership and/or management.

393.    As demonstrated above, upon information and belief, Reifler dominated and controlled the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts.

394.    Reifler funneled assets and property to the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts, including, but not limited to, directing payments or and other monies owed to Reifler by third-parties to these trusts and companies.

395.    Reifler dominated and controlled the assets of the Reifler Conspirators to fund his millionaire lifestyle during his ongoing Chapter 7 bankruptcy, to spend millions of dollars on teams of high-priced attorneys, to institute and maintain bad faith litigation using the Ponzi Scheme Entities as litigants and to commit massive fraud upon Plaintiff and the courts, all to Plaintiff's substantial, ongoing detriment.

## V.    CLAIMS FOR RELIEF

### CLAIM I – FRAUD

396.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

397.    Beginning in or about 2014 and continuing through the present, there is now a well-documented and adjudged campaign by the Reifler Conspirators to destroy evidence of all misrepresentations and unlawful acts, including permanent deletion and/or destruction of email and electronic evidence and documents, correspondence, official corporate documents and/or account records.

398.    Reifler has been held in contempt of court by this Court, the United States District Court, Southern District of New York, for failure to produce documents relating to his Ponzi Scheme Entities, Sham Family Companies and/or the Sham Family Trusts.

399.     Reifler has been held in contempt of court multiple times by the United States District Court, Middle District of North Carolina, for failure to produce documents relating to his Ponzi Scheme Entities, Sham Family Companies and/or the Sham Family Trusts.

400.     Reifler and/or the Reifler Conspirators have been held in contempt of court multiple times by the United States Bankruptcy Court, Southern District of New York, for failure to produce documents relating to his Ponzi Scheme Entities, Sham Family Companies and/or the Sham Family Trusts.

401.     The Department of Justice concluded, after investigation and expert review and analysis, that between 2016 and 2018, Reifler destroyed his documents and documents of or relating to the Ponzi Scheme Entities and/or other Reifler Conspirators.

402.     The Securities and Exchange Commission concluded, after investigation and expert review and analysis, that between 2016 and 2018, Reifler destroyed documents of his, the Ponzi Scheme Entities and/or other Reifler Conspirators.

403.     The United States Postal Inspection Service concluded, after investigation and expert review and analysis, that between 2016 and 2018, Reifler destroyed documents of his, the Ponzi Scheme Entities and/or other Reifler Conspirators.

404.     The New York Supreme Court has concluded that Reifler attempted to and did in fact destroy documents relating to his business matters and the Ponzi Scheme Entities.

405.     Accordingly, many of the following allegations of fact, by necessity due to the intentional campaign of careful concealment and destruction of evidence by Defendants, are made upon information and belief.

406.     Upon information and belief, Reifler and/or the other Reifler Conspirators have made multiple, material misrepresentations and/or omissions of fact, with knowledge

of their falsity and made with intent to defraud.  Plaintiff reasonably and justifiably relied on the misrepresentations and/or fraudulent omissions of Reifler and/or the other Reifler Conspirators, resulting in substantial and ongoing damage to Plaintiff.

407.    Upon information and belief, at the inception of his business venture with Plaintiff in March 2014, Reifler misrepresented tremendous wealth, business knowhow, financial services capabilities, business and financial success to Plaintiff by providing false literature, marketing, brochures and press, and by giving Plaintiff a tour of a 147-acre, massive country estate (replete with stables of horses, indoor riding arena, ice skating rink, movie theater and shooting range, motor cross track, and four-bedroom guest house), a luxury Manhattan penthouse apartment atop a luxury hotel and an entire floor of offices located in the heart of Manhattan's 57th Street Corridor  on Madison Avenue in the renowned-named IBM Building, with dozens of people working for Reifler's group of companies.

408.    Upon information and belief, in truth Reifler was insolvent, owed the IRS over $22 million for not paying any taxes for over a decade and a half, owned neither the country estate nor the New York City apartment, and the people in the offices were unrelated, subtenants, most of whom did not work for him or his companies.

409.    Upon information and belief, Reifler did not own the multimillion dollar properties he showed to Plaintiff and/or Reifler and in truth had unlawfully placed ownership and created fake liens on of those properties with, to and/or for the benefit of Defendant Ackerberg, other Defendants named herein and/or third party agents in a desperate and illegal attempt to defraud Plaintiff (by creating the false appearance of Reifler commanding tremendous wealth and success) and creditors (by concealing property and/or placing it

beyond their reach by having ownership on paper in the names of those other than Reifler).

410.     Reifler made the foregoing misrepresentations to Plaintiff so that Plaintiff would agree to start the business Talking Capital LLC with him, agree to the incorporation of their business Talking Capital LLC on March 24, 2014 and sign the Talking Capital Operating Agreement thereafter on September 8, 2014.  The Reifler Conspirators had actual knowledge of his insolvency, business failures and misrepresentations and provided substantial assistance to the commission of this fraud.

411.     Plaintiff justifiably relied upon these misrepresentations to his detriment, causing him substantial damages.

412.     Upon information and belief, Reifler misrepresented that he and his company Forefront Capital Management, LLC and Forefront Capital Markets, LLC were FINRA-registered securities brokers in good standing, and that he and it conducted business subject to FINRA's high level of business propriety, ethics, due diligence and regulatory compliance.

413.     Upon information and belief, Reifler's representations regarding his FINRA registration status and that of his entities were knowingly false when made, and they were not conducting business subject to FINRA's high level of business propriety, ethics, due diligence and regulatory compliance.

414.     Upon information and belief, the truth was that the company's New York State securities registration had been canceled, and it would lose its SEC status in January 2015, a matter of months after the execution of the Talking Capital LLC Operating Agreement by Plaintiff and Reifler.

415.     Upon information and belief, Reifler had engaged in unlawful and/or

improper activity prior to the formation of Talking Capital LLC, which he kept hidden from Plaintiff and was not a matter of public record, which would lead to his voluntarily surrender of his FINRA registration and that of his entities sometime in 2015 soon after Talking Capital commenced business.

416.    Reifler kept hidden from Plaintiff his unlawful activity leading to the surrender of his and his entities FINRA registration, as well as his ultimate loss of registered status.

417.    Plaintiff would have never agreed to conduct or have continued to conduct business with Reifler had he known the truth regarding Reifler and FINRA.

418.    FINRA registration was critical to Plaintiff's decision to go forward with and stay in business with Reifler because Plaintiff relied upon it to ensure that Reifler and his company Defendant Forefront Partners would comply with FINRA, SEC and banking rules and regulations in their business dealings.

419.    To date, FINRA has permanently barred Reifler and the SEC has an action pending against Reifler seeking his permanent ban from the securities industry and purchase and sale of securities.

420.    Reifler made these FINRA and business conduct related misrepresentations so that Plaintiff would agree to start the business Talking Capital LLC with him, agree to the incorporation of their business Talking Capital LLC and sign the Talking Capital Operating Agreement thereafter.

421.    Plaintiff justifiably relied upon these misrepresentations and the foregoing, other misrepresentations to his detriment, causing him substantial damages.

422.    Reifler misrepresented to Plaintiff that he founded, operated, and oversaw a vast conglomerate of companies he collectively called the "Forefront Capital Group," he provided Plaintiff with marketing material and brochures, and made other verbal and written misrepresentations falsely describing each so-called "Forefront" company as having its own financial specialty and purpose, which he falsely promised Plaintiff would be put to use in their new business.

423.    These companies, according to Reifler, included Defendant Forefront Capital Markets, LLC, which Reifler represented could and would issue securities to one or more institutional, individual or corporate accredited investors; make introductions to investors, business combinations and clients; prepare and organize necessary due diligence materials and data room for potential investors; draft and prepare marketing and offering materials; develop financial and valuation analysis; advise and assist on alternative financing structures and arrangements; and provide other corporate financial advisory and investment banking services.

424.    Upon information and belief, Reifler's representations regarding his Forefront Capital Group of companies were knowingly false when made, and they were not actually ready, willing, or able to provide the aforementioned promised services in the manner described.

425.    Upon information and belief, the Forefront Capital Group companies are the Ponzi Scheme Entities, nominal, cancelled, fictional and/or otherwise unlawful companies over which Reifler exerted total control, including their accounts, and used them as his personal banks and to run a multimillion-dollar, criminal Ponzi scheme.

426.    Upon information and belief, the Ponzi Scheme Entities were the alter egos

of Reifler.

427.    Upon information and belief, the Ponzi Scheme Entities were never funded properly, their corporate formalities never observed, they were created with the intent to defraud Plaintiff and third parties, they never possessed the specialty services, staff or capabilities presented, and their assets were treated as the personal property of Reifler, distributed to him personally, to the Ponzi Scheme Entities, the Reifler Family Defendants and/or the Sham Family Entities.

428.    Upon information and belief, Reifler never intended to use the Ponzi Scheme Entities to assist Talking Capital LLC as he represented to Plaintiff he would.

429.    Plaintiff would have never agreed to conduct or have continued to conduct business with Reifler had he known the truth regarding the true nature of the Ponzi Scheme Entities and that they never were ready, willing or able to act or provide services in the manner described by Reifler.

430.    Reifler made the Forefront Capital Group and related financial services misrepresentations so that Plaintiff would agree to start the business Talking Capital LLC with him, agree to the incorporation of their business Talking Capital LLC and sign the Talking Capital Operating Agreement thereafter.

431.    Plaintiff justifiably relied upon these Forefront Capital Group and related financial services misrepresentations and the foregoing, other misrepresentations to his detriment, causing him substantial damages.

432.    Reifler also represented that his company Defendant Forefront Partners, LLC, his proposed Member for Talking Capital LLC, was the "merchant banking" entity within the Forefront Capital Group of companies, that it also provided necessary due

diligence services, compliance services, and materials, and that it was owned by him and his mother, Defendant Ackerberg (who Reifler has testified is a very wealthy woman) and another successful businessperson, Christopher E. Engel, the president of Forefront Management Group, LLC.

433.    Upon information and belief, Reifler's representations regarding Defendant Forefront Partners, LLC were knowingly false when made, and it was not actually ready, willing or able to provide the aforementioned promised services in the manner described. Upon information and belief, the Defendant Forefront Partners, LLC was the main company used by Reifler to conduct his Ponzi scheme, one of the few entities named as a defendant by the SEC, and was used as the main vehicle by which Reifler unlawfully took and transferred money in and out of the accounts of the Reifler Conspirators.

434.    Upon information and belief, Defendant Forefront was not owned by several people including the vastly wealthy Defendant Ackerberg, it was a single member, shell entity that was the alter ego of Reifler, with no legitimate business purpose, used to commit fraud and commit crimes before and after it was introduced to Plaintiff by Reifler.

435.    Reifler    made    the    Defendant    Forefront    Partners,    LLC-related misrepresentations so that Plaintiff would agree to start the business Talking Capital LLC with him, agree to the incorporation of their business Talking Capital LLC and sign the Talking Capital Operating Agreement thereafter.

436.    Plaintiff justifiably relied upon these Defendant Forefront Partners, LLC misrepresentations and the foregoing other misrepresentations, would not have commenced business with Reifler had he known the truth.  Plaintiff justifiably relied upon these misrepresentations by Reifler and the Ponzi Scheme Entities to his detriment and it caused

him substantial damages.

437.   Upon information and belief, in March of 2014, before Plaintiff agreed to go forward in the telecom factoring business and before the March 24, 2014 formation of Talking Capital LLC, Reifler intentionally misrepresented that he had already procured several financing opportunities for the business through his company, and that funding could proceed in April 2014.

438.   Reifler made the misrepresentations regarding have procured several financing opportunities for the business that could proceed in April 2014 so that Plaintiff would agree to start the business with him and agree to the March 24, 2014 incorporation of their business as Talking Capital LLC.

439.   Plaintiff justifiably relied upon these and the foregoing, other misrepresentations to his detriment, causing him substantial damages.

440.   Reifler misrepresented to Plaintiff that he would conduct the telecom factoring business of Talking Capital LLC in a legitimate and legal manner; that he and/or the Ponzi Scheme Entities would provide due diligence, marketing and multiple financial services pursuant to the highest standards; and that he would abide by the terms of the Talking Capital Operating Agreement executed by Plaintiff and Reifler.

441.   Upon information and belief, from the commencement of business at Talking Capital LLC in 2014, immediately thereafter, and through October 2016, and even beyond, Reifler instead engaged is multiple fraudulent acts and schemes using Defendants Talking Capital, Forefront Partners LLC and the other Ponzi Scheme Entities.

442.   Reifler's schemes and artifice to defraud ultimately destroyed the telecom factoring business; caused Plaintiff to incur substantial damages and loss; subjected him to

inquiry by federal authorities and associated costs (Plaintiff was never named or considered a suspect in a any wrongdoing, criminal or otherwise); caused the oldest African-American life insurance company in the nation to be put in receivership from which it never returned; caused losses in excess of $34.2 million dollars; and resulted in Reifler being federally indicted and convicted of felony wire fraud.

443.    Upon information and belief, Reifler directed and/or controlled the Reifler Family Defendants, Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts and their respective accounts.  Upon information and belief, he used those entities and people, their accounts and/or assets as his own personal banks and funds, and unlawfully diverted, siphoned, withdrew and/or transferred millions of dollars from and to them before and during his bankruptcy, in order to fund his Ponzi scheme and other fraudulent endeavors to enrich the Reifler Conspirators to the detriment of Plaintiff and many others.

444.    Upon information and belief, between March 24, 2014 and October 10, 2016, Reifler controlled and/or directed the Reifler Conspirators in a scheme whereby he fraudulently induced would be investors but instead upon information and belief, Talking Capital LLC, would pay off himself, the Reifler Conspirators or other earlier investor victims with new investor/ victim's money, thereby preventing discovery and encouraging additional and larger investments.

445.    Upon information and belief, Reifler used Plaintiff's long-planned telecom factoring business, and its member Forefront, to conduct vast fraud that he actively, carefully and successfully concealed, and directed others associated with Defendants, to conceal from Plaintiff.  Reifler's misdeeds, fraud and crimes destroyed the business and damaged Plaintiff.

446.     Upon information and belief, between 2014 through October 2016, from the inception of Talking Capital and Reifler's contractual relationship with Plaintiff, Reifler used Talking Capital investor money to pay off earlier investors or the Reifler Conspirators.

447.     Upon information and belief, the following fraudulent acts upon Plaintiff and third parties led to the demise of Talking Capital LLC as a going telecom factoring concern and resulted in substantial damages to Plaintiff.

448.     Upon information and belief, within one month of Plaintiff and Reifler signing the Operating Agreement for Talking Capital LLC, Reifler secretly swindled Karen and Doug McFarland of Westminster, MD out $200,000 they sought to invest in Talking Capital's telecom factoring business as heretofore described.  Upon information and belief, Reifler directed the transfer of the McFarlands' $200,000 to Defendant Forefront Partners instead of Talking Capital.

449.     Upon information and belief, in furtherance of his Ponzi scheme and before the McFarland fraud, Reifler falsely claimed he obtained $1,000,000 for investment in Talking Capital from an individual named Bob Beyer who has denied ever making such an investment. Instead, upon information and belief, a hidden investor named Mark Fisher invested $500,000 into a Forefront entity which was laundered as part of the unknown $1,000,000 investment.  The source of the remaining $500,000 investment is still unknown to this day.   Some of those funds were used to repay a portion of the McFarlands' investment and/or to make it appear they were receiving return on their investment. Upon information and belief, Reifler also unlawfully transferred Mr. Beyer's funds intended for Talking Capital to his single member, wholly owned Defendant Forefront Partners LLC, as well as other of the Reifler Conspirators he controlled.

450.   Upon information and belief, Reifler used Defendant Forefront Partners and the Reifler Conspirators to engage in similar acts of fraud as against Plaintiff and other third parties.

451.   Upon information and belief, Reifler's Ponzi scheme and the Reifler Conspirators also converted monies from investors and financial backers that had financed actual Talking Capital telecom factoring deals, and were due for repayment after the telecom company borrowers repaid their accounts receivable loans.

452.   Upon information and belief, Talking Capital secured in 2014 its first, multimillion dollar lender, Summit Trust Company, to finance its telecom factoring deals. On the eve of the transfer of $6 million by Summit Trust Company to Talking Capital, Reifler represented to Plaintiff that Summit had made the last-minute demand that the money not be transferred to Talking Capital, but instead to Defendant Forefront Talking Capital Investment, LLC.

453.   Upon information and belief, Reifler's representation that Summit Trust Company demanded that the $6 million not be transferred to Talking Capital, and instead be sent to Defendant Forefront Talking Capital Investment, LLC, was false, made knowingly with intent that Plaintiff rely upon it, which Plaintiff justifiably did to his detriment.

454.   Despite Reifler's misrepresentation, upon information and belief, the truth was that, in February of 2015, Reifler misappropriated Summit's $6 million that he told Summit would be used to provide the short-term factoring financing to Talking Capital's telecommunications company clients. Plaintiff was under the impression that Reifler returned those funds, but instead Reifler converted those funds into a company called Port Royal-NCM LLC, wholly owned by Reifler as an interim step to completely steal their $6M

of investment capital for his own business and personal use.

455.    Upon information and belief, Reifler misappropriated Summit Trust Company's $6 million loan to Talking Capital and used the funds to: (i) support unrelated real-estate development projects in which he had a personal interest; and (ii) purchase the rights to manage the investments of a reinsurance trust owned by North Carolina Mutual Insurance Company, which had a $34.2 million portfolio of assets.

456.    Reifler made the misrepresentations regarding the Summit Trust Company funds to induce Plaintiff to continue to do business with him and enrich himself.

457.    Plaintiff justifiably relied upon the Summit Trust Company misrepresentations and the foregoing, other misrepresentations to his detriment, causing him substantial damages.

458.    In or about January 2015, Reifler first represented to Plaintiff that he wanted to use the $6 million from Summit to gain access to and control over a $34 million insurance fund of North Carolina Mutual Insurance company as heretofore described in detail, which insurance fund monies he represented could be used to finance Talking Capital telecom factoring deals.

459.    Plaintiff advised Reifler that it sounded opaque, risky, rife with conflict of interest and unlikely to pass legal muster, and that if Reifler involved Talking Capital or Plaintiff, then Plaintiff would end the business and sever ties with Reifler.

460.    On March 28, 2015, Reifler promised and otherwise represented he would not involve Plaintiff or Talking Capital with the insurance deal and/or wrote to Plaintiff that he would have "zero" involvement.

461.    Upon information and belief, Reifler proceeded with the insurance deal,

making multiple misrepresentations, committing numerous forgeries of Plaintiff's signature and committing felony fraud so proceeding.

462.    Reifler knowingly made misrepresentations regarding the North Carolina Mutual Insurance Fund,  and not involving Plaintiff or their business Talking Capital, intending that Plaintiff would rely upon those misrepresentations.

463.    Plaintiff justifiably relied upon Reifler's misrepresentations that he would not involve Plaintiff or Talking Capital with the North Carolina Mutual Insurance Fund, as well as the foregoing, other misrepresentations, to his detriment, causing him substantial damages.

464.    Upon information and belief, Reifler and/or the Ponzi Scheme Entities purportedly became responsible in 2015 for investing an approximate $34.2 million reinsurance portfolio for North Carolina Mutual Life Insurance Company, by October 2016 the $34 million was lost, and in the process Reifler attempted to defraud and defrauded North Carolina Mutual Life Insurance Company into believing that its millions of dollars of assets were secured by sending it false and fraudulent pledge agreements of Defendant Talking Capital, signed with forgeries of Plaintiff's signatures.

465.    Upon information and belief, Reifler unlawfully took, used, transferred, siphoned and/or otherwise converted the $34.2 million of the North Carolina Mutual Life Insurance Company Fund in order to continue his Ponzi scheme through Ponzi Scheme Entities and/or other fictional, nonexistent, unauthorized and/or legally dead entities, and enrich the Reifler Conspirators.

466.    Reifler was criminally prosecuted for emailing forged Talking Capital pledges and his artifice to defraud using Defendant Talking Capital, Forefront Partners and

other of the Ponzi Scheme Entities.  Reifler pled guilty to felony wire fraud arising out these allegations.

467.    The Securities and Exchange Commission filed an action against Reifler, Defendant Forefront Partners LLC and Defendant Forefront Capital Services LLC arising out of his misrepresentations and misappropriation of the Summit Trust monies, the forged pledges and his artifice to defraud using Defendant Talking Capital, Forefront Partners and other of the Ponzi Scheme Entities.  The SEC seeks to ban Reifler for life.

468.    Plaintiff justifiably relied upon Reifler's misrepresentations that he would not involve Plaintiff or Talking Capital with the North Carolina Mutual Insurance Fund, illegal activities and/or criminal acts, as well as the foregoing, other misrepresentations, to his detriment, causing him substantial damages.

469.    Upon information and belief, in the years before and during the short life of Defendant Talking Capital LLC as a going telecom factoring business from March 2014 to October 2016, Reifler was legally insolvent.  On January 20, 2017, Reifler filed Chapter 7 bankruptcy and those proceedings remain pending and active to date in the United States Bankruptcy Court of this District.

470.    Upon information and belief, Reifler made sworn to misrepresentations and committed perjury multiple times on or about the time of his filing of Chapter 7 bankruptcy, which enabled him to commit the further fraud of seizing control of bankruptcy estate assets (the Ponzi Scheme Entities, Forefront Partners and Talking Capital) and using them to file false and unlawful litigation against Plaintiff.

471.    Permitting Reifler's ongoing bankruptcy fraud to continue to the detriment of Plaintiff and in mockery of the law and courts has substantially damaged Plaintiff and, if permitted

to continue, will irreparably harm him, the courts, the public and the law.

472.    The first proof of claim filed in his bankruptcy in the SDNY after the $22,982,518.68 IRS claim was a $6,000,000.00 claim by Reifler's mother Defendant Ackerberg, followed by over $30 million worth of claims of other creditors.

473.    The filing of the proof of claim for $6,000,000 by Defendant Ackerberg constituted a fraud on the United States Bankruptcy Court for the Southern District of New York.

474.    Upon information and belief, Defendants Ackerberg and Reifler conspired to commit fraud upon the United States Bankruptcy Court for the Southern District of New York by filing a false, $6,000,000 claim on behalf of Defendant Ackerberg and against Reifler.

475.    Upon information and belief, the $6,000,000 claim filed by Defendant Ackerberg in Reifler's Chapter 7 bankruptcy proceeding was based upon a judgment obtained by Defendant Ackerberg in the Supreme Court of New York, Dutchess County, in the same amount, against Reifler.

476.    Upon information and belief, the $6,000,000 judgment entered in the Supreme Court of New York, Dutchess County, was obtained by the commission of fraud upon the Supreme Court of New York by Defendants Ackerberg and Reifler.

477.    Upon information and belief, in order to obtain her fraudulent, $6 million judgment against her son Reifler, Defendant Ackerberg submitted and/or caused to be submitted false declarations and/other court filings to the Supreme Court of New York which contained misrepresentations regarding her right to a judgment under the law.

478.    Upon information and belief, Reifler also failed to disclose and made, false affirmative representations regarding his sole-ownership of several of the Ponzi Scheme Entities, including Defendant Forefront Partners, LLC.

479.     Reifler did not disclose in his schedules or statements filed in the SDNY Bankruptcy Court that he was the sole owner of the single member entity Defendant Forefront Partners LLC.

480.     On February 24, 2017, the next month after filing Chapter 7 bankruptcy, Reifler signed and caused to be filed a Verified Complaint by Defendant Forefront Partners LLC against Plaintiff and others in the State of New York, Supreme Court, New York County, Commercial Division.

481.     In his Verified Complaint filed against Plaintiff on February 24, 2017 in New York state court, executed and sworn to upon penalty of perjury by Reifler on the same date, Reifler expressly, affirmatively and falsely swore that he was a non-member of or otherwise did not hold an ownership interest in Defendant Forefront Partners LLC.

482.     Reifler filed and/or caused to be filed an Amended Complaint June 16, 2017 against Plaintiff in New York state court, executed and sworn to upon penalty of perjury by Reifler on the same date, which also expressly, affirmatively and falsely swore that he was a non-member of or otherwise did not hold an ownership interest in Defendant Forefront Partners LLC.

483.     On March 15, 2022, after the several years of false testimony to the contrary set forth, *supra*, herein, Reifler confessed in sworn testimony on March 15, 2022 that he is and always was the sole-owner of Forefront Partners LLC.

484.     Reifler failed to disclose his ownership of Forefront Partners LLC in the SDNY Bankruptcy Court and filed a sworn to, written representation affirmatively denying ownership in Forefront Partners to the New York state court, but Reifler was, in fact, the sole owner of Forefront Partners LLC at the time he made those false sworn statements and filings.

485.     Upon information and belief, between January 20, 2017 and February 24, 2017,

Reifler committed, at a minimum and no less than, the following three criminal acts in order to unlawfully file and attack Plaintiff with frivolous and costly state court litigation:

486.     Reifler committed statutory bankruptcy when he failed to disclose Forefront Partners LLC as an asset belonging to his Chapter 7 bankruptcy estate;

487.     Reifler committed perjury when he signed, had witnessed and caused to be filed a Verified Complaint and an Amended Verified Complaint on behalf of Forefront Partners LLC in New York state court, in which he falsely swore under oath that he held no ownership interest in Forefront Partners LLC.

488.     Reifler committed statutory bankruptcy fraud when he unlawfully controlled a bankruptcy asset -- his wholly owned, single member Forefront Partners LLC-- by his filing of Verified Complaint and then an Amended Verified Complaint in Forefront's name and on its behalf.

489.     As heretofore described in detail, Reifler has made several misrepresentations and committed multiple instances of perjury, which in turn have permitted him to commit and attempt to conceal criminal bankruptcy fraud, which includes the filing and maintaining of unlawful litigation against Plaintiff using Ponzi Scheme Entities that are bankruptcy estate assets and should not be under Reifler's control.

490.     Reifler has received and continues to receive substantial assistance in his campaign of numerous fraudulent and illegal schemes from the Reifler Conspirators, which he controls and/or directs for his personal benefit, to the substantial detriment of Plaintiff and the mockery of this federal tribunal, the SDNY Bankruptcy Court and Courts of the State of New York.

491.     Upon information and belief, between 2012 and through the present, Reifler

received and continues to receive millions of dollars annually from the Reifler Conspirators and/or uses them to hide and conceal money from the courts, Plaintiff and creditors.

492.    The Reifler Conspirators had actual knowledge of and assisted in the fraud by assigning property to Reifler and/or their co-Defendants and by placing the proceeds of fraud beyond the reach of Plaintiff and other creditors, thereby delaying legal proceedings and permitting Defendant Reifler to engage in a years-long campaign of fraud and deceit, which enriched Reifler and caused substantial harm to Plaintiff.

493.    Reifler's misrepresentations to the courts and Plaintiff were carefully concealed and detrimentally relied upon.  Plaintiff, the courts, the public and the law have been and continue to be damaged and mocked by their reliance and the effect of the cumulative, ongoing frauds and federal crimes committed by the Reifler Conspirators.

494.    As described herein, the actions and conduct of the Reifler Group were knowing, intentional and malicious acts, undertaken in willful and wanton and/or reckless disregard of Plaintiff's rights and without any justification or excuse.

495.    The Reifler Group has controlled and utilized the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts for the purpose of furthering their wrongful, illegal, fraudulent and tortious conduct.

496.    The Reifler Group knowingly, willfully, purposely and wrongfully utilized the Ponzi Scheme Entities, Sham Family Companies, the Sham Family Trusts and the Attorney Defendants to further their wrongful conduct.

497.    As a direct and proximate result of the tortious conduct of the Reifler Group through the use of the corporate veils of the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts, Plaintiff has suffered and continue to suffer damages.

498.    Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts acted as nominees for Reifler and held proceeds from unlawful transfers to or for the benefit of Reifler.

499.    Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts knew they were holding the unlawful transfers for Reifler.

500.    Upon information and belief, Reifler siphoned the millions of dollars in unlawful transfers to the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts to keep his property and money beyond the reach of Plaintiff, as a creditor, and to permit his unlawful campaign of fraud upon Plaintiff to commence, proceed and remain concealed.

501.    Upon information and belief, Reifler exercised, and continues to exercise, sole and exclusive dominion and control over the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts, their activities and assets.

502.    Upon information and belief, with the exception of Forefront Partners LLC, none of the Ponzi Scheme Entities or Sham Family Companies are entities in good standing in their state of incorporation.

503.    Upon information and belief, Reifler exercised absolute control over the conduct of the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts and intentionally and maliciously used such control to work an injustice upon Plaintiff and the courts.

504.    As a direct and proximate result of the tortious conduct of the Reifler Group, Plaintiff has suffered and continues to suffer damages.

505.    The Reifler Group has controlled and utilized the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts for the purpose of furthering their wrongful, illegal, fraudulent and tortious conduct.

506.     The Reifler Group knowingly, willfully, purposely and wrongfully utilized the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts to further their wrongful conduct.

507.     As a direct and proximate result of the tortious conduct of the Reifler Group through the use of the corporate veils of the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts, Plaintiff has suffered and continue to suffer damages.

508.     Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts acted as nominees for Reifler and held proceeds from unlawful transfers to or for the benefit of Reifler.

509.     Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts knew they were holding the unlawful transfers for Reifler.

510.     Upon information and belief, Reifler siphoned the millions of dollars in unlawful transfers to the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts to keep his property beyond the reach of his creditors and to permit his unlawful campaign of fraud upon the courts and Plaintiff to commence, proceed and remain concealed.

511.     Upon information and belief, Reifler exercised, and continues to exercise, sole and exclusive dominion and control over the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts, their activities and assets.

512.     Upon information and belief, Reifler exercised absolute control over their conduct and intentionally and maliciously used such control to work an injustice upon Plaintiff and the courts.

513.     Upon information and belief, the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts are the alter ego of Reifler and their veils should be pierced

to hold Reifler the Reifler Family Defendants personally responsible for their debts, obligations and liabilities.

### CLAIM II – AIDING AND ABETTING FRAUD

514.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

515.     Upon information and belief, Reifler, individually, and/or the Reifler Conspirators, collectively, have committed multiple instances of fraud and have sustained ongoing fraudulent schemes and crimes to Plaintiff's great detriment.  Upon information and belief, the Reifler Conspirators had actual knowledge of and provided substantial assistance to and in the commission of such past and ongoing fraud, fraudulent acts and omissions, and crimes.

516.     Upon information and belief, the Reifler Conspirators provided substantial assistance by engaging in a pattern of funding Reifler's fraudulent schemes, delaying creditors through false claims of ownership interests and control, staving off bankruptcy through fraudulent acts so that Reifler could maintain his false façade of solvency, success and tremendous wealth, all of which the Reifler Conspirators had full knowledge of and carried out in order to enrich themselves to Plaintiff's detriment.

517.     Upon information and belief, when Reifler did not have funds sufficient to maintain his Ponzi scheme, he followed a pattern of purportedly "borrowing" money from his mother's trust, the Sham Family Companies and/or the Reifler Conspirators.

518.     Upon information and belief, Reifler maintained a life of luxury during his insolvency and  Chapter 7 bankruptcy by controlling accounts of the Reifler Conspirators which contained millions of dollars, which millions of dollars he unlawfully transferred, siphoned, converted and/or spent on himself,  his residence, dozens of attorneys, Ponzi and other ongoing

fraudulent schemes.   Upon information and belief, Reifler also uses, directs and/or controls the Reifler Conspirators, their assets and accounts to commit ongoing fraud and crimes, with the full knowledge of the Reifler Conspirators.

519.    Upon information and belief, Reifler also uses the Reifler Conspirators, with their full knowledge and consent, to keep his assets out of reach of the courts and/or creditors, which permits the Reifler Conspirators' substantial assistance, ongoing funding, financial and/or other unlawful support of and participation in ongoing fraudulent endeavors and litigation.

520.    At the same time Plaintiff was considering entering into business and commence operations at Talking Capital with Reifler, Defendants Ackerberg and Reifler were carrying out a scheme to delay Reifler's creditors and defraud the court in order to enrich themselves unlawfully, to maintain the false appearance of Reifler wealth and ownership of the sprawling estate Sky Blue Farm, and to induce Plaintiff fraudulently into agreeing to commence business with Reifler, going forward and continuing with that business through October 10, 2016.

521.    Upon information and belief, in or around March through May 2014, at the same time Plaintiff and Reifler were launching Talking Capital LLC, Reifler and Defendant Ackerberg were preparing false, backdated demand notes for $6,000,000, creating fraudulent liens on Sky Blue in Defendant Ackerberg's favor, and defrauding the New York State Supreme Court, Dutchess County, by filing false judgments in Defendant Ackerberg's name against Reifler in the same amount.

522.    Upon information and belief, Defendants Ackerberg and Reifler's filing of and/or causing to be filed an application for judgment, based on a false demand note and false loan default, constituted a fraud upon the Dutchess County court, intended to shield assets unlawfully for later improper use by Reifler and/or the Reifler Conspirators.

523.     Upon information and belief, the alleged $6 million purported loan from Defendant Ackerberg to Reifler, upon which the Dutchess County judgment was based, did not exist.

524.     Upon information and belief, $6 million was wired from Defendant the Kelsey Reifler Trust and not from Defendant Ackerberg.  Upon information and belief, Defendant Kelsey Reifler signed an agreement which purportedly authorized Defendant Ackerberg to borrow monies from the Kelsey Reifler Trust.

525.     Upon information and belief, this fraud upon the Court committed by Defendants Ackerberg, Reifler and the Reifler Conspirators was intended by them to delay, hinder and defraud creditors so that Reifler could maintain a false appearance of solvency and have later access to the funds in question through his mother Defendant Ackerberg and/or the other Reifler Conspirators.

526.     Upon information and belief, Defendants Ackerberg, Reifler and the Reifler Conspirators sought to and did, in fact, unlawfully delay, hinder and defraud creditors in order to permit Reifler to pursue his campaign of fraud using the newly formed Talking Capital and the Ponzi Scheme Entities, all to Plaintiff's great detriment.

527.     Upon information and belief, immediately before his January 2017 bankruptcy, while he and Plaintiff were engaged in business at Talking Capital, Reifler purportedly transferred millions of dollars to the Reifler Conspirators.

528.     Upon information and belief, Reifler also transferred his membership interests in Sham Family Companies, including, but not limited to, transferring his interest in Defendant Kelcop Family LLC *a/k/a* Kelcop LLC to his wife, Defendant Nancy Reifler for $10.00, making her its only member, and Reifler its only Manager, during the same period.  Upon information and belief, this Kelcop LLC transfer is another example of Reifler controlling assets that he falsely

represents he does not own, yet thereafter using them as if he does, for his personal benefit, to fund the retention of counsel, ongoing fraud and unlawful litigation against Plaintiff.

529.     As with his perjury to conceal his sole-ownership of Defendant Forefront Partners LLC, Reifler has testified under oath falsely regarding ownership of Defendant Kelcop LLC.

530.     Reifler has testified that his wife only owned Defendant Kelcop LLC, he has testified that his daughter Defendant Kelsey Reifler was the sole owner, and he has testified that Defendants Nancy Reifler, Kelsey Reifler, Cole Reifler and Paige Reifler were "limited partners" of Defendant Kelcop LLC, even though Defendant Kelcop was a limited liability company and not a limited partnership.

531.     Upon information and belied, Reifler was always and remains the sole owner and manager of Defendant Kelcop LLC, Defendant Kelcop is the alter ego of Reifler, Reifler and the Reifler Conspirators used Defendant Kelcop LLC to fund the Reifler Ponzi scheme and ongoing bankruptcy fraud.

532.     Upon information and belief, the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts are the alter egos of Reifler.  Upon information and belief, the Reifler Conspirators intentionally misrepresent ownership and control of these entities in an effort to shield Reifler's assets from bankruptcy, have those assets on hand for Reifler's unlawful use, and to provide unlawful support to Reifler in his ongoing artifice to defraud Plaintiff, third parties and the courts.

533.     Reifler has admitted under oath that he regularly invaded and paid monies from Defendant Kelcop and one or more of the Sham Family Companies and/or Sham Family Trusts.

534.     Reifler regularly transferred monies to one or more of the Sham Family Trusts and the Sham Family Companies before and during his Chapter 7 bankruptcy proceedings.

535.     Reifler also directed payments or third parties to direct payments for him or for his benefit into the bank accounts of Defendant Kelcop LLC, the Sham Family Trusts and the Sham Family Companies before and during his Chapter 7 bankruptcy proceedings.

536.     Reifler directed monies owed to him to the Sham Family Trusts and the Sham Family Companies Trusts, including Defendant Kelcop LLC and the Kelsey Reifler Trust, and freely used accounts he controlled to pay his own personal expenses and to make subsequent transfers to himself or the Ponzi Scheme Entities he either owned, managed, controlled and/or operated for his benefit.

537.     Upon information and belief, without regard to actual names of represented ownership or management of record of the Ponzi Scheme Entities, the Sham Family Companies and/or the Sham Family Trusts, Reifler enjoyed and enjoys full and complete control of the dozens of bank accounts associated with these entities and uses funds from those accounts for his personal luxury and to fund years-long fraudulent schemes and criminal activity.

538.     Upon information and belief, in the six-year period prior to the Reifler filing bankruptcy on January 20, 2017, Reifler made transfers totaling over $10 million into accounts belonging to the Reifler Conspirators.

539.     Upon information and belief, in the five-year period since he filed bankruptcy filing bankruptcy on January 20, 2017, Reifler controlled, made use of and/or received the benefit of transfers totaling over $10 million from the accounts belonging to the Reifler Conspirators.

540.     Upon information and belief, Reifler and the Reifler Conspirators did not maintain records or other documentation to support the unlawful transfers made prior to and during Reifler's bankruptcy.

541.     Upon information and belief, what records Reifler and the Reifler Conspirators

may have had were deleted or destroyed by Reifler in order to conceal the transfers.

542.     Upon information and belief, Reifler improperly funneled money to and from the Reifler Conspirators through unlawful transfers during his bankruptcy and continuing to date.

543.     Upon information and belief, Reifler improperly transferred interests of his property to and from the Reifler Conspirators through unlawful transfers during his bankruptcy and continuing to date.

544.     Upon information and belief, Reifler remitted unlawful transfers to or for the direct benefit of the Reifler Conspirators.

545.     Upon information and belief, Reifler intended the unlawful transfers to benefit the Reifler Conspirators.

546.     Upon information and belief, Reifler knew he had existing unsecured creditors, including Plaintiff, at the time of each unlawful transfer.

547.     Upon information and belief, the Reifler Conspirators caused and/or allowed Reifler to make the unlawful transfers, and they received benefit resulting from the said transfers from Reifler.

548.     Upon information and belief, the Reifler Conspirators should not have accepted the unlawful transfers, or related benefits from Reifler.

549.     Upon information and belief, the Reifler Conspirators did not accept the unlawful transfers or benefits derived therefrom in good faith.

550.     Upon information and belief, the Reifler Conspirators knew, or should have known, that the unlawful transfers and benefits arising therefrom from Reifler were improper.

551.     Upon information and belief, the Reifler Conspirators knew of Reifler's massive frauds at the time they accepted the unlawful transfers from Reifler.

552.     Upon information and belief, the Reifler Conspirators did not provide reasonably equivalent value, fair consideration or any consideration or value in exchange for the aforementioned unlawful transfers.

553.     Upon information and belief, Reifler did not receive reasonably equivalent value in exchange for the unlawful transfers to the Reifler Conspirators made between 2014 and the present, and the Reifler Conspirators did not receive reasonably equivalent value in exchange for unlawful transfer from or on behalf of Reifler during that period.

554.     Upon information and belief, Reifler made unlawful transfers for illegitimate purposes and the Reifler Conspirators knew that Reifler made those transfers.

555.     Upon information and belief, at the time of the unlawful transfers, the Reifler Family Defendants knew that Reifler was their son, husband, father or managing and controlling member or trustee.

556.     Upon information and belief, the Reifler Conspirators knew that, at the time of the unlawful transfers, unsecured creditors of Reifler existed and were unpaid by Reifler.

557.     Upon information and belief, the Reifler Conspirators acted as nominees for Reifler and held proceeds from unlawful transfers to or for the benefit of Reifler.

558.     Upon information and belief, the Reifler Conspirators knew they were holding the unlawful transfers for Reifler.

559.     Upon information and belief, Reifler siphoned the millions of dollars in unlawful transfers to the Reifler Conspirators to keep his property beyond the reach of his creditors and to permit his unlawful campaign of fraud upon the courts and Plaintiff to commence and proceed, for his benefit and enrichment, and to the great detriment of Plaintiff and the public.

560.     Upon information and belief, Reifler exercised, and continues to exercise, sole

and exclusive dominion and control over the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts, their activities and assets.   Upon information and belief, Reifler exercised absolute control over their conduct and used such control to work an injustice upon Plaintiff and the courts.

561.    Upon information and belief, at all times relevant, Reifler completely dominated and controlled the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts. By virtue of the foregoing, the Ponzi Scheme Entities, Sham Family Companies and/or the Sham Family Trusts are the alter ego of Reifler.

562.    Upon information and belief, Reifler used the Ponzi Scheme Entities, the Sham Family Companies and the Sham Family Trusts as his instrumentality by commingling and/or diverting funds with or among them for his personal benefit and for unlawful and improper purposes.

563.    Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts were inadequately capitalized or capitalized with Reifler's assets.

564.    Upon information and belief, all of the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts, with the exception of Defendant Forefront Partners LLC, are companies that are not in good standing, companies that have had their corporate charter revoked, companies that have been cancelled, never formed, fictional and/or legally dead.

565.    Upon information and belief, the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts shared common control, ownership and/or management.

566.    Upon information and belief, Reifler funneled assets and property to the Ponzi Scheme Entities, Sham Family Companies and the Sham Family Trusts, including, but not limited to, directing payments or and other monies owed to Reifler by third-parties to these trusts and

companies.

567.    Upon information and belief, Reifler dominated and controlled the assets of the Reifler Conspirators to fund his millionaire lifestyle during his ongoing Chapter 7 bankruptcy, to spend millions of dollars on teams of high-priced attorneys, to institute and maintain bad faith litigation using the Ponzi Scheme Entities as litigants and to commit massive fraud upon Plaintiff and the courts, in order to enrich the Reifler Conspirators and to Plaintiff's substantial, ongoing detriment.

568.    As described herein, the actions and conduct of the Reifler Conspirators in aiding and abetting Reifler and each other's fraud were knowing, intentional and malicious acts, undertaken in willful and wanton and/or reckless disregard of Plaintiff's rights and without any justification or excuse.

569.    As a direct and proximate result of the tortious conduct of the Reifler Group, Plaintiff has suffered and continues to suffer damages.

## CLAIM III – BREACH OF CONTRACT

570.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

571.    On September 8, 2014, Plaintiff and Reifler executed and agreed to the terms of the Talking Capital LLC Operating Agreement (the "Agreement") in both their individual capacities as Managers of Talking Capital, and as the persons authorized to sign on behalf of the Members of Talking Capital; that is, Defendant Forefront Partners LLC (*i.e.*, signed for by Reifler) and Omanoff America Telecom, LLC (*i.e.*, signed for by Plaintiff).

572.    Reifler breached multiple obligations imposed by the Agreement.

573.    As a result of Reifler's breaches, Plaintiff has been damaged, continues to be

damaged and is subject to additional damages in the future.

574.     Section 7.1 of the Talking Capital Operating Agreement at issue provides that a Member of Talking Capital cannot transfer or "encumber or permit or suffer any encumbrance of all or any part of the Member's Interest in the Company unless such encumbrance has been approved in writing by the Board of Managers."

575.     Section 1.13 provides that "Interest" means the entire ownership interests of a Member in the Company.

576.     Furthermore, Section 11.8 of the Agreement provides that "he, she or it will not make any disposition of all or any part of the Interests which will result in the violation by her, him or it or by the Company of the Securities Act, the DGCL, the Act, or any other applicable securities laws."

577.     Upon information and belief, between September 2014 and October 2016, Reifler carried out and concealed a massive and illegal Ponzi scheme using Defendants Talking Capital, Forefront Partners and the Reifler Conspirators, resulting in him ultimately pleading guilty to federal criminal charges of felony wire fraud.   Upon information and belief, Reifler's Ponzi scheme, fraudulent acts and crime constituted material breaches of the Talking Capital Operating Agreement by, *inter alia*, constituting a transference and encumbrance of Talking Capital with over $10 million in unlawful and/or fraudulent debt, in violation of Section 7.1 and other sections of the Agreement.

578.     Upon information and belief, between September 2014 and October 10, 2016, Reifler breached the Agreement by committing and using Defendant Talking Capital, Forefront Partners and the other Ponzi Scheme Entities to commit wire fraud, banking fraud, securities fraud, forgery and perjury.

579.    Upon information and belief, between September 8, 2014 and October 10, 2016, Reifler breached the Agreement by hiding his multimillion dollar debts and his insolvency.

580.    Upon information and belief, Reifler's series of material breaches of the Agreement committed between September 8, 2014 and October 10, 2016 caused the demise of Talking Capital LLC as a going business concern.

581.    Upon information and belief, immediately after Plaintiff resigned from Talking Capital on October 10, 2016, Reifler breached the Agreement by withdrawing and/or causing to be withdrawn all the funds from Talking Capital's bank account.

582.    Upon information and belief, Reifler's series of material breaches of the Agreement committed  between September 8, 2014 and October 10, 2016 rendered him and Talking Capital unable to complain of Plaintiff's subsequent refusal to perform in any manner under the Agreement.

583.    Upon information and belief, the foregoing breaches of the Agreement by Reifler were intentional, made in bad faith and malicious.

584.    As a result of Reifler's intentional, bad faith and malicious breaches of the Agreement, Plaintiff has been damaged, continues to be damaged and is subject to additional damages in the future.

**CLAIM IV – CIVIL CONSPIRACY**

585.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

586.    Upon information and belief, each member of the Reifler Group participated in the conspiracy to injure Plaintiff, without justification or right.

587.    The Reifler Group knowingly, willfully and purposely agreed and conspired to

take the illegal and tortious actions described herein.  The overall goal of the conspiracy was to deprive Plaintiff of money and distributions due, unlawfully attempt to use Plaintiff and his ownership interests in Talking Capital to pay off past Reifler Conspirators debt, ands/or to enrich the Reifler Conspirators by the taking and conversion of Plaintiff's funds due and owed him and by engaging in bankruptcy fraud that has and continues to damage him substantially as heretofore described in this Complaint.

588.    As a direct and proximate result of the tortious conduct of the Reifler Group, Plaintiff has been damaged, continues to be damaged and is subject to additional damages and irreparable harm in the future.

## CLAIM V – ACCOUNTING

589.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

590.    The Reifler Group's conspiracy and fraudulent transfers constituted a *de facto* conversion of assets rightfully belonging to Plaintiff.

591.    The Reifler Group knowingly, willfully, purposely and wrongfully have converted funds through secreted transactions.

592.    As a direct and proximate result of the Reifler Group's wrongful conduct, Plaintiff is entitled to an accounting of all of the funds and assets that the Reifler Group has taken or received as part of its conspiracy.

## CLAIM VI – CIVIL RICO VIOLATIONS

593.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

594.    Upon information and belief, at all times relevant hereto there has been and

continues to be an association-in-fact, joined at relevant times by each of the Reifler Conspirators.

595.    Upon information and belief, the Reifler Conspirators have all participated in the association-in-fact and the conduct of the association which constitutes a racketeering enterprise in violation of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962 (the "Enterprise").

596.    Upon information and belief, each of the Reifler Conspirators, directly and indirectly, have conducted and participated in the affairs of the Enterprise within the State of New York and elsewhere through a pattern of racketeering activity as heretofore described in these pleadings.

597.    Upon information and belief, each of the Reifler Conspirators knowingly and intentionally participated in and have actively pursued the goals of the Enterprise, which was to enrich the Reifler Conspirators by, *inter alia*, the following: (i) committing multiple instances of fraud, as outlined above; (ii) committing perjury, forgery, bankruptcy fraud, wire fraud, banking fraud, filing false reports with the Federal Bureau of Investigation and/or securities fraud; (iii) fraudulently transferring corporate assets, as outlined above; (iv) the conversion of funds owing to Plaintiff; and (v) transmitting false, misleading and fraudulent financial information to Plaintiff.

598.    Each of the aforesaid acts was done by use of the United States mail and/or wire, in interstate commerce.

599.    Each of the Reifler Conspirators has been employed by and/or associated with the Enterprise.

600.    Upon information and belief, each of the Reifler Conspirators participated directly or indirectly in the business of the Enterprise, by *inter alia*, engaging in the illegal conduct outlined above, concealed as business transactions, including mail and wire fraud consisting of causing funds, false financial and other information to be conveyed through the mails and wires and the

use of the mails and wires to further the fraud and conversion of assets, as outlined above.

601.     Upon information and belief, each of the Reifler Conspirators knowingly participated in this pattern of racketeering. The scheme began no later than March 2014 and continues through and including the present. Each of the Reifler Conspirators helped to perpetrate the scheme.

602.     Upon information and belief, the Reifler Conspirators had full knowledge of the economic harm inflicted upon Plaintiff and multiple others through their scheme.

603.     Although effective use of the Court's compulsory process will be necessary to reveal the full and complete scope of illegal conduct by the Reifler Conspirators, upon information and belief, they have committed the predicate acts of violating federal and state mail fraud and wire fraud statutes in furtherance of a fraudulent scheme.  In doing so, the aforesaid Reifler Conspirators are jointly and severally liable to Plaintiff.

## CLAIM VII – RICO CONSPIRACY

604.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

605.     Upon information and belief, the Reifler Conspirators conspired with each other to violate the provisions of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962, *et seq*.

606.     Upon information and belief, the object of the Reifler Conspirators' conspiracy was to enrich themselves at Plaintiff's expense and engaging in the violations outlined above.

607.     Upon information and belief, the Reifler Conspirators' conspiracy began no later than March 2014 and continues until the present.  Upon information and belief, each of the Reifler Conspirators knowingly participated in the conspiracy.

608.     Upon information and belief, each agreed to commit, did commit and/or aided and

abetted in the commission of, racketeering acts, including predicate acts required by the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962, *et seq*., including, but not limited to, tax fraud, bank fraud, wire fraud, securities fraud, bankruptcy fraud, perjury, filing false reports with the United States, forgery and the use of the mails and wires to implement, perpetuate and share the fruits of their fraudulent schemes.  Upon information and belief, each of the Reifler Conspirators knew that the scheme they were pursuing would enrich themselves and injure Plaintiff.

609.     Upon information and belief, each of the Reifler Conspirators agreed to commit racketeering acts in furtherance of the conspiracy including, but not limited to, tax fraud, bank fraud, wire fraud, securities fraud, bankruptcy fraud, perjury, filing false reports with the United States, forgery and, and the use of the mails and wires to implement, perpetuate  and share the fruits of their fraudulent  schemes.

610.     Upon information and belief, as a direct and proximate result of the Reifler Conspirators' conspiracy to violate the RICO statute, Plaintiff, his business and property have been substantial damaged.

## CLAIM VIII – ABUSE OF PROCESS

611.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

612.     The Attorney Defendants, Reifler, Forefront, Talking Capital, TCP I, and TCP II (collectively, the "AUP Defendants") have engaged in a deliberate abuse of process in the New York action.   The AUP Defendants have maliciously used their multiple perjury filled versions of the Verified Complaint and applications brought by Orders to Show Cause to deliberately cause Plaintiff harm and injury including emotional distress.

613.     The AUP Defendants used regularly issued process in the New York action

(including perjury filled versions of the Verified Complaint) and with the intent to do harm without excuse or justification to Plaintiff.

614.    The AUP Defendants' extreme and outrageous conduct intentionally or recklessly caused financial and other harm to Plaintiff.

615.    The use of the process was in a perverted manner to obtain a collateral objective in a pending action against Plaintiff who was the whistle blower who exposed Reifler's fraud and the prosecution of the New York action is intended to extract retribution on Plaintiff for exposing Reifler's fraud.

616.    Said conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

617.    A cursory review of such facts and circumstances surrounding this matter would lead a reasonably prudent person in like circumstances to believe and understand AUP Defendants have prosecuted the New York action based on the perjury of the Reifler Conspirators and that the New York action is unjustly harming and injuring Plaintiff.

618.    The AUP's conduct is frivolous since it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law

619.    The conduct is frivolous since it is undertaken primarily to delay or prolong the resolution of the New York action litigation against Plaintiff, and to harass or maliciously injure Plaintiff in retaliation for his whistle blowing on Reifler's fraud.

620.    The AUP Defendants' conduct as against Plaintiff is frivolous since the documentation and affidavits presented to the Court in support of the three different versions of

the Verified Complaints and the numerous applications brought by Order to Show Cause assert material factual statements that are false and presented in calculated deceptive and misleading ways.

621.    By reason of the foregoing, Plaintiff has been forced to retain counsel to protect his interests.

622.    Plaintiff is entitled to recover from the AUP Defendants an amount to be determined at trial compensating her for the harm and injury caused to her by the AUP Defendants' outrageous conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

(i)    Assume jurisdiction of this case;

(ii)    Enter a temporary restraining order, pending a determination on the meritsof Plaintiff's application for a preliminary injunction, and thereafter a preliminary injunction restraining and enjoining Reifler and the Ponzi Scheme Entities from the commission of further bankruptcy fraud and/or the continuance of the New York state court litigation by Reifler and/or the Ponzi Scheme Entities against Plaintiff, his agents, representative and/or corporate entities in which he is a member or shareholder.

(iii)    Order a speedy hearing of this action for a declaratory judgment and advance this matter on the calendar of the Court, pursuant to Rule 57  of the Federal Rules of Civil Procedure;

(iv)    Issue judgments pursuant to the Court's authority under 28 U.S.C. §§ 2201& 2202 declaring that Defendants' conduct described in this Complaint to be unlawful on the grounds set forth in the First through Eighth Claims of this Complaint;

(v)      Permanently enjoin Defendants, their employees, agents, and all others acting in concert with him from the commission of further bankruptcy fraud and/or the continuance of the New York state court litigation by Reifler and/or the Ponzi Scheme Entities against Plaintiff, his agents, representative and/or corporate entities in which he is a member or shareholder.

(vi)     Award complete, further and proper specific relief in order to obtain rightswhich Plaintiff has been wrongfully denied by the Defendants' unlawful acts;

(vii)    Enter judgment finding the Reifler Conspirators jointly and severally liable and award Plaintiff compensatory damages;

(viii)   Enter judgment finding the Reifler Conspirators jointly and severally liable and award Plaintiff punitive damages;

(ix)     Enter judgment finding the Reifler Conspirators jointly and severally liable and award Plaintiff treble damages;

(x)      Entering judgment piercing the corporate veils of the Ponzi Scheme Entities, the Sham Family Companies, and the Sham Family Trusts to hold them jointly and severally liable with the Reifler Conspirators for the monetary award entered in favor of Plaintiff in this action;

(xi)     Award Plaintiff costs and expenses of this action, including attorney fees, costs and interest, as authorized by law; and

(xii)    Award any other relief that the Court finds to be appropriate.

Dated:  July 8, 2022

**LAW OFFICES OF MICHAEL P. PASQUALE, LLC**
*Lead Counsel for Plaintiff, Rodney Omanoff*

By:  <u>*/s/* Michael Pasquale</u>
     Michael P. Pasquale, Esq.
     (To Be Admitted *Pro Hac Vice*)

       -and-

Dated: July 8, 2022

**LAW OFFICES OF SCOTT H. BERNSTEIN, LLC**
*Local Counsel for Plaintiff, Rodney Omanoff*

By:  <u>*/s/* Scott H. Bernstein</u>
     Scott H. Bernstein, Esq.